**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FRANCOIS OLENGA, | |
| Plaintiff, | |
| v. | Civil Action No. 1:19-cv-1135 (RDM) |
| ANDREA M. GACKI, *et al.*, | |
| Defendants. | |

## JOINT APPENDIX

In accordance with Local Civil Rule 7(n) and the Court's Minute Order dated October 9, 2019, Defendants respectfully submit the enclosed appendix.  The parties have conferred and agreed on the contents of the appendix.

Dated January 3, 2020                    Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

DIANE KELLEHER
Assistant Branch Director

*/s/Stuart J. Robinson*
STUART J. ROBINSON
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Tel: (415) 436-6635
Fax: (415) 436-6632
Email: stuart.j.robinson@usdoj.gov
Cal. Bar No. 267183

Counsel for Defendants

## Evidentiary Memorandum Review Sheet (Re-designation)

**Name:**     FRANCOIS OLENGA
             DRC-16433

**Drafted:**    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
              Sanctions Investigator
              Human Rights & Corruption Section

**Approved:**   ▇▇▇▇▇▇▇▇▇▇▇▇   7/31/19
              Section Chief
              Human Rights & Corruption

              Joshua Prober            7/31/19
              Acting Assistant Director
              Counterterrorism, Human Rights & Corruption

              Greg Gatjanis        8/12/19
              Associate Director
              Office of Global Targeting

              ▇▇▇▇▇▇▇▇▇▇▇▇   closed electronically 8/2/2019
              Office of the Chief Counsel
              (Foreign Assets Control)

              Brad Smith
              Deputy Director
              Office of Foreign Assets Control

              Andrea Gacki        AMG
              Director               8·13·2019
              Office of Foreign Assets Control

TOP SECRET ████████████████



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C.

OFFICE OF FOREIGN ASSETS CONTROL

(U) Case ID: DRC-16433

## (U) <u>EVIDENTIARY MEMORANDUM</u>

(U) MEMORANDUM FOR:    ANDREA GACKI
DIRECTOR
OFFICE OF FOREIGN ASSETS CONTROL

(U) THROUGH:    GREGORY T. GATJANIS
ASSOCIATE DIRECTOR
OFFICE OF GLOBAL TARGETING

JOSHUA PROBER
ACTING ASSISTANT DIRECTOR
COUNTERTERRORISM, HUMAN RIGHTS, AND
CORRUPTION DIVISION

(U) FROM:    ██████████████████████████
SECTION CHIEF
HUMAN RIGHTS AND CORRUPTION SECTION

██████████████████████████
SANCTIONS INVESTIGATOR
HUMAN RIGHTS AND CORRUPTION SECTION

(U) SUBJECT:    **FRANCOIS OLENGA**: Designation pursuant to
Executive Order 13413, "Blocking Property of Certain
Persons Contributing to the Conflict in the Democratic
Republic of The Congo," as amended by Executive Order
13671, "Taking Additional Steps to Address the National
Emergency with Respect to the Conflict in the Democratic
Republic of the Congo"

TOP SECRET ████████████████

1

~~TOP SECRET~~ ████████████████████

## (U) I. INTRODUCTION

(U) On October 27, 2006, the President issued Executive Order 13413, "Blocking Property of Certain Persons Contributing to the Conflict in the Democratic Republic of the Congo," and on July 8, 2014, the President issued Executive Order 13671, "Taking Additional Steps to Address the National Emergency With Respect to the Conflict in the Democratic Republic of the Congo," which amended E.O. 13413. [Exhibit 1] [Exhibit 2]

(U) The amended Executive Order 13413 ("E.O. 13413" or the "Order") blocks the property and interests in property of any person determined by the Secretary of the Treasury, in consultation with the Secretary of State, to meet one or more of the criteria in the Order. [Exhibit 1] [Exhibit 2]

(U) Information presented in this memorandum and accompanying exhibits provides reason to believe that **FRANCOIS OLENGA (OLENGA)** is responsible for or complicit in, or has engaged in, directly or indirectly, actions or polices that undermine democratic processes or institutions in the Democratic Republic of Congo (DRC), and therefore should be added to the list of Specially Designated Nationals and Blocked Persons (SDN List).[1]

## (U) II. IDENTIFYING INFORMATION

| | |
|---|---|
| (U) | **FRANCOIS OLENGA (Individual)** [Exhibit 3, p. 1] |
| (U) AKA: | Francois Olenga Tete [Exhibit 3, p. 1] |
| (U) AKA: | Francois Olenga Tate [Exhibit 3, p. 1] |
| (U) AKA: | Francois Okunji [Exhibit 3, p. 1] |
| (U) AKA: | Francois Otshundi [Exhibit 3, p. 1] |
| (U) DOB: | July 10, 1949 [Exhibit 3, p. 1] |
| (U) Alt. DOB: | September 10, 1948 [Exhibit 3, p. 1] |
| (U) Alt. DOB: | October 9, 1948 [Exhibit 3, p. 1] |
| (U) POB: | Kindu, Maniema, Democratic Republic of the Congo [Exhibit 3, p. 1] |
| (U) Address: | Kinshasa, Democratic Republic of the Congo [Exhibit 3, p. 1] |
| (U) Citizenship: | Democratic Republic of the Congo [Exhibit 3, p. 1] |
| (U) Nationality: | Democratic Republic of the Congo [Exhibit 3, p. 1] |
| (U) Title: | General [Exhibit 3, p. 1] |
| (U) Title: | Chef de la Maison Militaire [Exhibit 3, p. 1] |
| (U) Title: | Head of the Military House of the President [Exhibit 3, p. 1] |
| (U) Gender: | Male [Exhibit 3, p. 1] |

## (U) III. BACKGROUND

(U) On June 1, 2017, U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) designated **OLENGA** pursuant to section 1(a)(ii)(E)[2] of E.O. 13413, as amended. [Exhibit 12, pp. 1-2]

---

[1] (U) Persons proposed for designation in this memorandum will appear in **BOLD CAPITAL** font.

[2] (U) Section 1(a)(ii)(E) of E.O. 13413, as amended, blocks all property and interests of property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or

~~TOP SECRET~~ ████████████████

TOP SECRET ███████████████████

(U) OFAC's evidentiary memorandum established a reason to believe that, at the time of designation on June 1, 2017, **OLENGA** was a leader of the Republican Guard, an entity that has, or whose members have, engaged in actions or policies that undermine democratic processes or institutions in the DRC. As described in OFAC's press release, in 2014, **OLENGA** was appointed to serve as the head of the Maison Militaire, or Military House of the President. The press release further stated that the Maison Militaire oversees the Republican Guard and that in this capacity **OLENGA** had operational control over the Republican Guard. Since early 2016, Republican Guard members had monitored and threatened opposition members and critics of then-President Joseph Kabila. In his role as the head of the Maison Militaire, **OLENGA** oversaw security operations on behalf of then-President Kabila's efforts to suppress political opposition in the DRC. [Exhibit 4, p. 1]

(U) On June 24, 2017, a lawyer in Brussels, Belgium and Lubumbashi, DRC, Maitre Aime Kilolo-Musamba (Kilolo), submitted a request for removal from the SDN List on behalf of **OLENGA**. **OLENGA** apparently signed page 20 of the Request, as well as a subsequent representation mandate form, while also including a scanned copy of **OLENGA**'s passport. [Exhibit 5, pp. 1-2, 20]

(U) On October 4, 2017, **OLENGA** submitted a letter notifying OFAC that Ferrari & Associates, P.C. was the sole law firm authorized to provide legal representation on his behalf before OFAC, and it included a statement that "[a]ny other individual and/or law firm representing themselves as [**OLENGA**'s] legal representative, including, but not limited to, Aime Kilolo, in matters before OFAC is not authorized to do so and should be ignored by the agency." The letter further authorized OFAC to disclose to Ferrari & Associates any information that OFAC had shared with Kilolo, or any other individual and/or law firm representing themselves as **OLENGA**'s representative. [Exhibit 6, p. 1]

(U) OFAC issued **OLENGA** questionnaires on January 10, 2018 [Exhibit 7] and September 14, 2018. [Exhibit 9] OFAC received responses to those respective questionnaires on April 10, 2018 [Exhibit 8] and October 24, 2018. [Exhibit 10]

(U) On February 13, 2019, Ferrari & Associates, on behalf of **OLENGA**, submitted correspondence to OFAC arguing that as **OLENGA** had retired from the DRC's Armed Forces (FARDC), as asserted in **OLENGA**'s October 24, 2018 questionnaire response,[3] that **OLENGA** could no longer be found to be a leader of the Republican Guard – which was OFAC's stated basis for **OLENGA**'s designation pursuant to E.O. 13413, as amended – and therefore OFAC should rescind **OLENGA**'s designation. [Exhibit 36, p. 1]

---

control of any United States person (including any foreign branch) of any person determined by the Secretary of the Treasury, in consultation with the Secretary of State, to be a leader of an entity, including any armed group, that has, or whose members have, engaged in any of the activities described in subsections (a)(ii)(A) through (a)(ii)(D) of the section. [Exhibit 2, pp. 1-2]

[3] (U) In an October 24, 2018 response to OFAC's September 14, 2018 questionnaire, **OLENGA** provided an original language and translated copy of Ordinance No. 18/068 of July 14, 2018, in which President Kabila ordered **OLENGA**'s retirement from the FARDC. According to the document, **OLENGA**'s retirement from the FARDC included any positions held therein, including his position as Commander of the Military House of the President of the Republic. [Exhibit 10, pp. 2-3, 7-8]

TOP SECRET ███████████████████

TOP SECRET ████████████████

(U) Consistent with information **OLENGA** provided OFAC in questionnaire responses, according to a July 16, 2018 Digital Congo article, on July 14, 2018, a DRC Presidential Order was made public that announced the retirement of **OLENGA** from the FARDC. [Exhibit 11, pp. 1-2]

(U) On August 15, 2019, OFAC granted **OLENGA**'s request for delisting pursuant to E.O. 13413 section 1(a)(ii)(E), as amended, as he is no longer a leader of the Republican Guard, an entity that has, or whose members have, engaged in actions or policies that undermine democratic processes or institutions in the DRC.  However, in light of the evidence below, including information unavailable to OFAC at the time of the initial designation, OFAC is now designating **OLENGA** pursuant to E.O. 13413 section 1(a)(ii)(C)(2), as amended, for being responsible for or complicit in, or having engaged in, directly or indirectly, actions or polices that undermine democratic processes or institutions in the Democratic Republic of Congo (DRC).

## (U) **IV. BASIS FOR DETERMINATION**

### (U) **FRANCOIS OLENGA (Individual) (OLENGA)**

(U) *OLENGA is responsible for or complicit in, or has engaged in, directly or indirectly, actions or policies that undermine democratic processes or institutions in the DRC.*

    i.  (U) Actions Initiated by **OLENGA** or the Maison Militaire



[Exhibit 14, p. 1]

TOP SECRET ████████████████

TOP SECRET



[Exhibit 15, pp. 1-2]

[Exhibit 16, p. 1]

ii.  (U) While head of the Maison Militaire, **OLENGA** controlled the actions of the Republican Guard

(U) According to an April 10, 2018 response to a January 10, 2018 OFAC questionnaire, **OLENGA** was appointed as the Commander of the Military House of the President of the Republic on September 18, 2014, per DRC Ordinance 14/058. [Exhibit 8, p. 3] **OLENGA**

---

[4] (U) The G7 is a platform of seven political parties that were dismissed from Kabila's majority coalition in September 2015 after publicly calling on Kabila to organize presidential elections on time and support a successor. On March 30, 2016, the G7 announced their support for Katumbi, who defected from Kabila's political party and joined the opposition in September 2015. [Exhibit 34, pp. 2-3]

TOP SECRET

TOP SECRET ███████████████

retired from the FARDC on July 14, 2018. [Exhibit 10, p. 2] According to a news article published on Digitalcongo.net and dated July 16, 2018, Head of State Kabila had ordered the retirement of some FARDC general and admiral officers, including Lieutenant-General **OLENGA**, among others. [Exhibit 11, pp. 1-2] Accordingly, OFAC assesses that **OLENGA** held the position of Commander of the Military House of the President of the Republic from September 18, 2014 through July 14, 2018.

(U//LES) According to a July 13, 2016 ████████[5] report ████████████, **OLENGA** "became Army Commander of the Congolese Army in 2001 and [as of July 2016 was] the head of the 'Military House of the President.' In his current position he controls the elite units and special battalions in the Congolese army, including the powerful yet brutal Republican Guard." [Exhibit 19, p. 3]



[Exhibit 20, pp. 1-2]

[Exhibit 21, pp. 1, 6]

[Exhibit 22, pp. 1-2]

[Exhibit 23, pp. 2-3]

---

[5] (U//LES) ████████████████████████

[Exhibit 19, p. 1]

TOP SECRET ████████████



TOP SECRET

(S 

[Exhibit 24, p. 4]

(C

[Exhibit 25, pp. 2-3]

iii. (U) The Republican Guard or its members have engaged in actions or policies that undermine democratic processes or institutions in the DRC; as Head of Maison Militaire, **OLENGA** is responsible for or complicit in, or has directly or indirectly engaged in, these actions or policies

(S

Exhibit 26, pp. 1-2]

(S

[Exhibit 27, p. 1]

(S 6

(

---

6 (S

TOP SECRET

7



[Exhibit 28, pp. 1-3]

[Exhibit 29, pp. 1-3]

(U) According to a December 16, 2016 *Human Rights Watch* (*HRW*)[7] article, during a deadly crackdown of security officials on opposition demonstrations in Kinshasa, from September 19 to 21, security forces killed at least 66 protestors. Some of those killed burned to death when the Republican Guard attacked opposition headquarters. Security forces took away the bodies of many victims. Some were thrown into the Congo River and later found washed up on its shores. Regarding the September 2016 protests and aftermath, *HRW* interviewed six Congolese security force and intelligence officers who said that members of the Republican Guard – including some Republican Guard units deployed in police uniforms – were responsible for much of the excessive force used during the demonstrations, firing on protestors with live ammunition and attacking at least three opposition party headquarters. [Exhibit 30, pp. 1, 4]



[Exhibit 31, p. 1]

[Exhibit 32, p. 1]

---

[7] (U) *Human Rights Watch* describes itself as a nonprofit, nongovernmental human rights organization known for its "accurate fact-finding" and "impartial reporting." [Exhibit 34, p. 9]

██████████████████



[Exhibit 33, p. 1]

(U) According to a May 9, 2016 *HRW* report, on the morning of April 24, 2016, police and Republican Guard soldiers blocked a team of human rights observers and security officers from MONUSCO from entering Lubumbashi's Kenya commune neighborhood, where a political meeting of the G7 was to take place.  Police blocked several streets in the neighborhood, forcing opposition leader Katumbi to travel on foot rather than by vehicle, and subsequently fired teargas toward Katumbi and his supporters, preventing the meeting from taking place. [Exhibit 34, pp. 3-4]



    iv.  <u>(U) Other post-designation reporting confirms that **OLENGA**'s removal from the SDN list is not warranted</u>



[Exhibit 18, pp. 1-2]

████████████████████████████████████████████████

---

[8] (U) ██████████████████████████████████████
    [Exhibit 40] ██████████████████████████████████

██████████████████

                        9



[Exhibit 13, p. 1]

## (U) V. ADDITIONAL INFORMATION CONSIDERED BY OFAC

i.    Information regarding **OLENGA**'s roles and responsibilities

(U) The reports and correspondence summarized below contain information that contradicts some of the above-described reporting and related assessments regarding **OLEGNA**'s roles and responsibilities over the Republican Guard while head of the Maison Militaire. Despite these reports and assertions from **OLENGA** himself, OFAC continues to assess based on the totality of the evidence summarized above that **OLENGA** was responsible for and in control of the Republican Guard. Although **OLENGA** is retired and no longer in the FARDC, he continues to meet the following basis for designation: to be responsible for or complicit in, or to have engaged in, directly or indirectly, actions or policies that undermine democratic processes or institutions in the DRC.



[Exhibit 35, pp. 1-2]

(U) **OLENGA**'s April 10, 2018 response to OFAC's January 10, 2018 initial questionnaire included, as respective Annexes A and B, DRC Ordinances concerning the scope of the organization and function of the Maison Militaire and the Republican Guard. Referencing those documents, **OLENGA**'s legal representative argues that the Republican Guard is directly answerable to the President of the Republic and the Chief of General Staff and that **OLENGA** is not in the chain of command between the Republican Guard and the President of the Republic. Further, DRC law does not grant **OLENGA**, in his capacity as Commander of the Maison Militaire, any authority over the Republican Guard. [Exhibit 8, pp. 10, 13-24]

(U) **OLENGA**'s October 24, 2018 questionnaire response repeated the previous argument that **OLENGA**'s former position did not include any authority over, or responsibilities vis-à-vis, the Republican Guard. The response further argued that in light of **OLENGA**'s retirement, **OLENGA** no longer exerts any control over the Republican Guard due to his retirement from the FARDC. [Exhibit 10, pp. 2-4, 7-11]

TOP SECRET

ii.   Other information regarding **OLENGA**'s conduct



[Exhibit 37, p. 1]

Exhibit 39, p. 1]

[Exhibit 38, p. 1]

TOP SECRET

~~TOP SECRET~~ ███████████

## (U) **LIST OF EXHIBITS**

(U) Exhibit 1:  Executive Order 13413 of October 27, 2006, "Blocking Property of Certain Persons Contributing to the Conflict in the Democratic Republic of the Congo," 71 Fed. Reg. 64105 (October 31, 2006).

(U) Exhibit 2:  Executive Order 13671 of July 8, 2014, "Taking Additional Steps to Address the National Emergency With Respect to the Conflict in the Democratic Republic of the Congo," 79 Fed. Reg. 39949 (July 10, 2014).

(U) Exhibit 3:  U.S. Department of the Treasury website, OFAC Sanctions List Search, Francois Olenga, available at https://sanctionssearch.ofac.treas.gov/Details.aspx?id=5445, accessed July 11, 2019.

(U) Exhibit 4:  U.S. Department of the Treasury website, Press Release, "Treasury Sanctions Senior Congolese Officials for Leading Republican Guard in Undermining Democratic Processes," June 1, 2017, available at https://www.treasury.gov/press-center/press-releases/Pages/sm0100.aspx.

(U) Exhibit 5:  Request for Administrative Reconsideration, Maitre Aime Kilolo-Musamba on behalf of Francois Olenga to OFAC, June 24, 2017.

(U) Exhibit 6:  Correspondence, Ferrari & Associates, P.C. to OFAC, "Letter from Francois Olenga Regarding Legal Representation," October 4, 2017.

(U) Exhibit 7:  Questionnaire, OFAC to Ferrari & Associates, P.C., January 10, 2018.

(U) Exhibit 8:  Questionnaire Response, Ferrari & Associates, P.C. to OFAC, April 10, 2018

(U) Exhibit 9:  Questionnaire, OFAC to Ferrari & Associates, P.C., September 24, 2018.

(U) Exhibit 10: Questionnaire Response, Ferrari & Associates, P.C. to OFAC, October 24, 2018

(U) Exhibit 11: Digital Congo, FARDC: Joseph Kabila names Liutenant-General Celestine Mbala Munsense General Staff, July 16, 2018, available at https://digitalcongo.net/article-en/5b4c668e51feed0004abe2b2, accessed February 22, 2019.

(U) Exhibit 12: Sanctions Actions Pursuant to Executive Order 13413 of October 27, 2006, "Blocking Property of Certain Persons Contributing to the Conflict in the Democratic Republic of the Congo," 82 Fed. Reg. 26239 (June 6, 2017).



(U//~~FOUO~~) Exhibit 13: ████████████████████ (S████████████████

(U//~~FOUO~~) Exhibit 14: ████████████████████ (S████████████████

(U//~~FOUO~~) Exhibit 15: ████████████████████ (S████████████████

(U//~~FOUO~~) Exhibit 16: ████████████████████ (S████████████████

(U//~~FOUO~~) Exhibit 17: ████████████████████ (S████████████████

~~TOP SECRET~~ ███████████



TOP SECRET ████████████████████████

(U//FOUO) Exhibit 18: ████████████████ (S ████████████████

(U//LES) Exhibit 19: ████████ Democratic Republic of the Congo: General Francois Olenga, July 13, 2016. (U//LES)

(U//FOUO) Exhibit 20: ████████████████ (S ██████

(U//FOUO) Exhibit 21: ████████████████ (S ██████

(U//FOUO) Exhibit 22: ████████████████ (S ████████████

(U//FOUO) Exhibit 23: ████████████████ (S ██████

(U//FOUO) Exhibit 24: ████████████████ (S ██████

(U//FOUO) Exhibit 25: ████████████████ (S ██████

(U//FOUO) Exhibit 26: ████████████████ (S ████████████

(U//FOUO) Exhibit 27: ████████████████ (S ████████████

(U//FOUO) Exhibit 28: ████████████████ (S ████████

(U//FOUO) Exhibit 29: ████████████████ (S ████████

(U//FOUO) Exhibit 30: Human Rights Watch, "DR Congo: Kabila Should Commit to Leave Office," December 16, 2016, available at https://www.hrw.org/print/297811, accessed July 16, 2019.

(U//FOUO) Exhibit 31: ████████████████ (S ████████████

(U//FOUO) Exhibit 32: ████████████████ (S ████████████

(U//FOUO) Exhibit 33: ████████████████ (S ████████████

(U) Exhibit 34: Human Rights Watch, "DR Congo: Crackdown on Presidential Aspirant," May 9, 2016, available at hrw.org/print/289664, accessed June 3, 2016.

(U//FOUO) Exhibit 35: ████████████████ (TS ████████

(U) Exhibit 36: Correspondence, Ferrari & Associates, P.C. to OFAC, "Letter Requesting Francois Olenga's Immediate Delisting from OFAC's SDN List," February 13, 2019.

(U//FOUO) Exhibit 37: ████████████████ (S ████████████

(U//FOUO) Exhibit 38: ████████████████ (S ████████████

(U//FOUO) Exhibit 39: ████████████████ (S ████████████

TOP SECRET ████████████████████████

TOP SECRET ████████████████

(U) Exhibit 40: ████████████████████████████████████████████████████████

TOP SECRET ████████████████

14

# U.S. DEPARTMENT OF THE TREASURY

**Press Center**

## Treasury Sanctions Senior Congolese Official for Leading Republican Guard in Undermining Democratic Processes

6/1/2017

**Washington** – Today, the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) sanctioned a senior Democratic Republic of the Congo (DRC) official pursuant to Executive Order (E.O.) 13413, as amended by E.O. 13671, which authorizes sanctions in light of activities that threaten the peace, security, or stability of the DRC. This action follows continued efforts by DRC President Joseph Kabila (Kabila) and the DRC Government to obstruct and delay preparations for a credible and inclusive presidential election and DRC's first peaceful democratic transfer of power in accordance with the December 31 agreement.

Specifically, OFAC designated François Olenga (Olenga), the head of the "Maison Militaire," or Military House of the President which oversees the Republican Guard, an entity that has, or whose members have, engaged in actions or policies that undermine democratic processes or institutions in the DRC. OFAC has also designated the Safari Beach, a resort located on the outskirts of Kinshasa, for being owned or controlled by Olenga. As a result of today's actions, all of the designated persons' assets within U.S. jurisdiction are frozen, and U.S. persons are generally prohibited from engaging in transactions with them.

"This action against Olenga sends a strong message that continued acts of violence, aggression, and suppression by the Congolese military against its own citizens are unacceptable," said OFAC Director John E. Smith. "The United States is prepared to apply additional sanctions against those who undermine the DRC's democratic or electoral processes."

Persons designated under E.O. 13413, as amended by E.O. 13671 may be ineligible for U.S. visas under Presidential Proclamation 8693 or other authorities.

**François Olenga, Chief of the Maison Militaire**
Olenga was appointed in 2014 to serve as Kabila's personal military Chief of Staff as head of the Maison Militaire. In this capacity Olenga has operational control over the Republican Guard.

In his role as head of the Maison Militaire, Olenga has overseen security operations on behalf of President Kabila's efforts to suppress political opposition in the DRC. In addition, the Maison Militaire has supported the reassignment of senior military officers believed to have pro-opposition tendencies.

The DRC Republican Guard has actively disrupted the political process in the DRC, including harassing political rivals, targeting opposing political parties, and arbitrarily arresting and executing Congolese citizens. As of 2016, Olenga had taken a more active role in the leadership of the Republican Guard. Additionally, Olenga developed a plan to use the Republican Guard to disrupt opposition activities and financial support.

Since early 2016, Republican Guard members have monitored and threatened opposition members and critics of President Kabila. In April 2016, Republican Guard soldiers blocked a team of human rights observers and United Nations security officers from observing an opposition political meeting. Security forces fired tear gas at opposition members and supporters, preventing the meeting from taking place. In the wake of protests across the DRC capital city, Kinshasa, in September 2016, heavily armed Republican Guard members allegedly attacked and set fire to the headquarters of several political parties with cans of gasoline, hand grenades, and rocket-propelled grenades. Reports suggest at least seven people died and several others were severely burned.

For identifying information on the individual and entity designated today, click here.

####

To the Office of Foreign Assets Control

Office of the Director

U.S. Department of the Treasury

1500 Pennsylvania Avenue, N.W.

Washington, D.C.  20220

## REQUEST FOR REMOVAL FROM OFAC SANCTIONS LIST NAMED "SPECIALLY DESIGNATED NATIONALS AND BLOCKED PERSONS LIST (SDN List)"

Maitre Aime KILOLO-MUSAMBA

The Representative of the Petitioner

Lawyer in Brussels (Belgium) and Lubumbashi (D.R.Congo) Bars

Counsel before the International Criminal Court

50, rue des drapiers  1050  Bruxelles /  BELGIUM (Europe)

Email : avocat.kilolo@gmail.com    tel. +243.811.817.860    & +32.495.483.939

## I. The Petitioner:

1. **Mr. François OLENGA TETE (Petitioner)**[1], a Congolese citizen, born on the 9th of October 1948 in the town of Kindu (Maniema) in the Democratic Republic of Congo. He is a general in the D.R.Congo Army. He is also the chief of Military house (Maison Militaire) of the President of D.R.Congo. He is actually residing in Kinshasa in D.R.Congo.

2. **The Petitioner has given representation mandate to Mr. Aimé KILOLO-MUSAMBA (Representative)**, born in Kinshasa on the 1st of January 1972, Lawyer in Brussels (Belgium) and Lubumbashi (D.R.Congo) Bars and also Counsel before the International Criminal Court, with the purpose of representing him (the Petitioner) in all proceedings related to the submission of the Petition(request) for removal from the Office of Foreign Assets Control List named" Specially Designated Nationals and Blocked Persons List (SDN List).The Representative has the power to act and undertake, on behalf of the Petitioner, all the necessary steps in accordance with the US law, specially the Code of Federal Regulation, in order to submit the request for removal of the Petitioner from the OFAC list (SDN List).

## II. Address for correspondence with the Petitioner:

3. Mr. Francois OLENGA TETE, the petitioner, residing in Kinshasa in the Democratic Republic of Congo, has elected domicile for the present proceedings in the office of his Representative located at the following address:

**c/° Maitre Aimé KILOLO-MUSAMBA**

---

[1] The U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) sanctioned him pursuant to Executive Order (E.O.) 13413, as amended by E.O. 13671

50, rue des drapiers
1050 Bruxelles
BELGIUM
Tel. +32.495.483.939   or   +243.811.817.860
Email: avocat.kilolo@gmail.com   or   aimekilolo@yahoo.fr

### III. Relevant facts:

4.    In the course of June 2017, the Petitioner, Mr. OLENGA TETE François,
through both the Congolese and international press, became aware of the fact
that since the 1st June 2017, the US Treasury Department had included his
name on the Specially Designated Nationals and Blocked Persons List (SDN
List), as well as a company named "Safari Beach Club" for being allegedly
owned by him (the Petitioner).[2]

5.    It seems that the U.S. Department of the Treasury's Office of Foreign Assets
Control (OFAC) sanctioned him pursuant to Executive Order (E.O.) 13413, as
amended by E.O. 13671, which authorizes sanctions in light of activities that
threaten the peace, security, or stability of the DRC.[3]

6.    It has been alleged that the Petitioner was sanctioned for the following factual
allegations:

> *"Olenga was appointed in 2014 to serve as Kabila's personal military Chief of
> Staff as head of the Maison Militaire. In this capacity, Olenga has operational*

---

[2] North Korea Designations and Updates; Non-proliferation Designations and Updates; Democratic
Republic of the Congo Designations; Counter Terrorism Removals
6/1/2017; OFFICE OF FOREIGN ASSETS CONTROL: Specially Designated Nationals List Update
https://www.treasury.gov/resource-center/sanctions/OFAC_Enforcement/Pages/20170601.aspx

[3] Treasury Sanctions Senior Congolese Official for Leading Republican Guard in Undermining
Democratic Processes
https://www.treasury.gov/press-center/press-releases/Pages/sm0100.aspx

DRC-16433 0032

*control over the Republican Guard.*

*In his role as head of the Maison Militaire, Olenga has overseen security operations on behalf of "President Kabila'efforts to suppress political opposition in the DRC. In addition, the Maison Militaire has supported the reassignment of senior military officers believed to have pro-opposition tendencies.*

*The DRC Republican Guard has actively disrupted the political process in the DRC, including harassing political rivals, targeting opposing political parties, and arbitrarily arresting and executing Congolese citizens. As of 2016, Olenga developed a plan to use the Republican Guard to disrupt opposition activities and financial support?*

*In the wake of protests across the DRC capital city, Kinshasa, in September 2016, heavily armed Republican Guard members allegedly attacked and set fire to the headquarters of several political parties with cans of gasoline, hand grenades, and rocket-propelled grenades. Reports suggest at least seven people died and several others were severely burned."*[4]

## IV. Request for notification of all the grounds reasons of the decision and access to the evidentiary memorandum which led to the sanction of the Petitioner:

7.   At this stage, the decision of OFAC was not notified to the Petitioner.

8.   Mr. François OLENGA TETE hereby respectfully   request to receive a notification of the official decision of the OFAC, including a full and detailed statement of the reasons or motivations for the decision, as well as the evidentiary memorandum that sets out the evidence supporting the determination. This is really important as the decision concerns his (Petitioner) freedom to dispose of funds and also his freedom to conclude financial transactions.

---

[4] Treasury Sanctions Senior Congolese Official for Leading Republican Guard in Undermining Democratic Processes
https://www.treasury.gov/press-center/press-releases/Pages/sm0100.aspx

9.  The common law implies a duty to give reasons where personal liberty is affected.[5]

10.  It has been stated that exceptions to the giving of reasons are where national security might be jeopardized.[6] For instance, in the case In *R v. Secretary of State for the Home Department, Exp. Fayed and Another* [1997] 1 All E.R.228, it was stated that where it was felt that reasons would involve disclosing matters not in the public interest, the decision maker must indicate that, so as to enable the aggrieved party to challenge that decision.[7]

11.  In the present case related to the Petitioner, there is no exceptional reason of national security which would prevent the disclosure of the grounds and evidence of the contested administrative decision including his name on the OFAC's List SDN.

12.  The universal principle of good administration of justice requires that an administrative decision contains factual and legal reasoning underlying all its findings.[8]

---

[5] Ms Jamala Ali, <u>DUTY TO GIVE REASONS – THE WAY FORWARD,</u> The New Guyana Bar Review Volume 2 Issue 1: May 2008: See also **Brooke LJ** in the *R (Wooder) v Feggetter* (supra) who stated "the common law implies a duty to state reasons ... where the subject matter is an interest so highly regarded by the law (for example, personal liberty) that fairness requires that reasons, at least for particular decisions, be given as of right."

In the *Doody* case, **Lord Mustill** emphasized that in a decision concerning personal liberty, the individual cannot be left to receive an unreasoned decision as if "the distant oracle has spoken, and that is that

http://www.guyaneselawyer.com/article-dutytogivereasons.html

[6] *R v. Secretary of State for the Home Dept, Exp. Hosenball* [1977] 3 All E.R. 452; *Exp. Adams* (1995) Independent, 28 April, diplomatic and confidential reasons.

http://www.guyaneselawyer.com/article-dutytogivereasons.html

[7] The case In *R v. Secretary of State for the Home Department, Exp. Fayed and Another* [1997] 1 All E.R.228

http://www.guyaneselawyer.com/article-dutytogivereasons.html

[8] Ms Jamala Ali, <u>DUTY TO GIVE REASONS – THE WAY FORWARD,</u> The New Guyana Bar Review Volume 2 Issue 1: May 2008 http://www.guyaneselawyer.com/article-dutytogivereasons.html

13. The giving of reasons is considered to be inextricably bound up with natural justice or the right to be fairly heard and is fundamentally important as a public law principle. It has been described by **Lord Denning MR** in *Breen v. AEU* [1971] 1 All E.R. 1148, 1154 as "one of the fundamentals of good administration.[9]

14.    It has been stated that although there is no duty at common law to give reasons, the duty is, *inter alia*, implied since it is necessary to ensure fairness, personal liberty and to prevent an aberrant, unreasonable or irrational decision.[10]

15. In addition, to give reasons is to invite accountability and transparency and to expose oneself to criticism; this helps to ensure that power is not abused or arbitrarily exercised. This will in turn promote public confidence in the system.[11]

16. It is submitted that constitutional justice imposes a requirement of procedural fairness and consequentially this necessitates a duty to give reasons. To not give reasons is the very essence of arbitrariness as one's status could be redefined without adequate explanation as to why this was done. Secrecy creates suspicion, justly or unjustly. This secrecy may also be described as the hallmark of inefficient and corrupt administration. Reasons must therefore be disclosed. Besides, the giving of good reasons would inevitably earn respect for the decision maker.[12]

---

[9] Ms Jamala Ali, <u>*DUTY TO GIVE REASONS - THE WAY FORWARD,*</u> The New Guyana Bar Review Volume 2 Issue 1: May 2008
http://www.guyaneselawyer.com/article-dutytogivereasons.html

[10] Idem

[11] Idem

[12] Idem

DRC-16433 0035

17. Although it has been stated that there is no express duty to give reasons, it is submitted that the common law has developed to a stage that in almost every case where a right is affected or an exercise of discretion is involved; there is a duty on the decision maker to give reasons.[13]

18. The reasoning must be formulated in a precise manner, clearly and unequivocally revealing the reasoning of the OFAC's decision, the author of the act, in order to enable the applicant (Petitioner) to know the justifications for the measures taken against him and allow also the competent court to exercise its control over its legality in further steps.

19. Furthermore, in so far as Mr. François OLENGA TETE did not benefit from a right of hearing prior to the adoption of the decision to include his name in the OFAC's list SDN, compliance with the obligation to state reasons is all the more important, Since it constitutes the only safeguard allowing the person sanctioned, at least after the adoption of that decision, to usefully take advantage of the remedies at his disposal to challenge the merits or the legality of that decision.[14]

---

[13] Idem

[14]The Courts have also taken the position that the duty to give reasons may be imposed on grounds of fairness. In *R v. Civil Service Appeal Board, exp. Cunningham (1991) (supra)* **Donaldson MR** stated that the giving of reasons was necessary to ensure fairness. **McCowan LJ** was of the view that the court was not required to tolerate the unfairness of reasons not being given while **Leggatt LJ** said that the duty to act fairly extended to the duty to give reasons. Indeed, administrative justice cannot justify unfairness.

In the leading House of Lords case of *Doody v. Secretary of State for the Home Department* (1993) 3 All E.R. 92, **Lord Mustill** referred to the term 'fairness' as "an insistence on greater openness, or ... 'transparency' in the making of administrative decisions." The Law Lord further stated that "Fairness will very often require that a person who may be adversely affected by the decision will have an opportunity to make representations on his own behalf either before the decision is taken with a view to producing a favorable result, or after it is taken, with a view to procuring its modification, or both. Since the person affected usually cannot make worthwhile representations without knowing what factors may weigh against his interests fairness will very often require that he is informed of the gist of the case which he has to answer."

DRC-16433 0036

20.   In the present case, the information available in the official website of the OFAC **does not provide specific facts related directly to the Petitioner, nor does it indicate the concrete actions taken, nor the orders given by Mr. François OLENGA TETE, nor the reports, Nor even the legal texts establishing the prerogatives of the Head of the Military House of the Head of State in the Democratic Republic of the Congo** on which the OFAC could and should have referred before determining whether the Petitioner intervened in the appointment or assignment of military officers or had operational control over the troops of the Republican Guard during the period covered by the OFAC's decision or at any other time.

21.   The mere fact of basing the reasons for the decision solely or mainly on the material acts allegedly committed by the units of the Republican Guard, without mentioning the factual or legal elements which lead to the conclusion that it was the Petitioner, Mr. François OLENGA TETE, who exercised Control or command over these units constitutes a totally inadequate motivation, which corresponds to an absence of motivation.[15]

---

The concept of fairness as outlined in *Doody* was applied in *R v. Secretary of State for the Department, Exp. Duggan* [1994] 3 All E.R. 277, *Reg. v. City of London, Exp. Matson* [1997] 1 W.L.R. 765 and *Reg. v. Secretary of State for the Home Department, Exp. McAvoy* [1998] 1 W.L.R. 790.

In *Exp. Duggan* (1994) which involved a prisoner who was serving a mandatory life sentence, it was stated by Rose LJ. at p.288 that "fairness requires that the gist of reports be revealed in order to give the opportunity for comment and that reasons be given subsequently."
http://www.guyaneselawyer.com/article-dutytogivereasons.html

[15] Having recognized that generally reasons must be given, what is the standard required? This was stated by Megaw J. in *Re Poyser and Mill's Arbitration* [1963] 1 All E.R. 612 as follows "The reasons must be proper and adequate and not only intelligible, but must deal with the substantial issues raised."

This statement was approved by the House of Lords in *Westminister City Council v. Great Portland Estates* [1984] 3 AllE.R. 744 with Phillips J. stating "that the decision must be such that it enables the appellant to understand on what grounds the appeal has been decided and be in sufficient detail to enable him to know what conclusions the inspector has reached on the principal important controversial issues."

22.   It is therefore appropriate at this stage of the proceedings to deplore the absence of specific facts which are directly linked to the Petitioner and which are capable of corroborating the allegations seriously undermining his honor and reputation as mentioned in the press release related to the sanctions imposed on him (the Petitioner).[16]The lack of mentioning specific facts done by the Petitioner does not allow him (the petitioner) to effectively challenge the sanctions imposed against him in the normal exercise of his right of appeal.[17]

### V. Legal basis for the request for removal from the OFAC's list SDN:

23.   Mr. Francois OLENGA TETE, the petitioner, respectfully requests the OFAC to reconsider its decision and to withdraw his name from the "Specially Designated Nationals and Blocked Persons List (SDN List)."

---

In the Indian case of *Union of India v. M.L. Capoor* (1973) 2 SCC 836, it was stated that the reasons should reveal a rational nexus between the facts considered and the conclusions reached. Mere mechanical or rubber stamp and uniform reasons given will not satisfy the requirement.

http://www.guyaneselawyer.com/article-dutytogivereasons.html

[16] Treasury Sanctions Senior Congolese Official for Leading Republican Guard in Undermining Democratic Processes
https://www.treasury.gov/press-center/press-releases/Pages/sm0100.aspx

[17] The present position seems to be both the existence of a right of appeal or judicial review and the absence of any appeal may be factors predisposing the courts to require reasons.
In *Exp. Dave* (supra), the Crown Court gave a decision without reasons. There was an appeal. The decision was quashed for absence of reasons; that absence made it impossible to exercise the right of appeal.
In Canada, a common law duty for administrative decision makers to give reasons is also recognized where there is a right of appeal *Baker v. Canada (Minister of Citizenship and Immigration)* (1999) 2 SCR 817 and also where the decision has "important significance for an individual".
In the case of *Mahabir Prasad v. State of U.P.* (1970) 1 SCC 764, the Supreme Court of India similarly held that if a quasi-judicial order is subject to appeal the law necessarily implies the requirement of reasons otherwise the right of appeal shall become 'an empty formality'.
http://www.guyaneselawyer.com/article-dutytogivereasons.html

24.   Indeed, the title 31, paragraph §501.807 of the Code of Federal Regulations lays down the right of administrative appeal for the Petitioner in purpose to obtain the removal of his name from the OFAC's list SDN in the following terms:

> "*Procedures governing delisting from the Specially Designated Nationals and Blocked Persons List:*
>
> *A person may seek administrative reconsideration of his, her or its designation or that of a vessel as blocked, or assert that the circumstances resulting in the designation no longer apply, and thus seek to have the designation rescinded pursuant to the following administrative procedures:*
>
> *(a)A person blocked under the provisions of any part of this chapter, including a specially designated national, specially designated terrorist, or specially designated narcotics trafficker (collectively, "a blocked person"), or a person owning a majority interest in a blocked vessel may submit arguments or evidence that the person believes **establishes that insufficient basis exists for the designation.** The blocked person also may propose remedial steps on the person's part, such as corporate reorganization, resignation of persons from positions in a blocked entity, or similar steps, which the person believes would negate the basis for designation. A person owning a majority interest in a blocked vessel may propose the sale of the vessel, with the proceeds to be placed into a blocked interest-bearing account after deducting the costs incurred while the vessel was blocked and the costs of the sale. This submission must be made in writing and addressed to the Director, Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, NW.—Annex, Washington, DC 20220.*
>
> *(b) The information submitted by the blocked person seeking unblocking or by a person seeking the unblocking of a vessel will be reviewed by the Office of Foreign Assets Control, which may request clarifying, corroborating, or other additional information.*
>
> *(c) A blocked person seeking unblocking or a person seeking the unblocking of a vessel may request a meeting with the Office of Foreign Assets Control; however, such meetings are not required, and the office may, at its discretion, decline to conduct such meetings prior to completing a review pursuant to this section.*

*(d) After the Office of Foreign Assets Control has conducted a review of the request for reconsideration, it will provide a written decision to the blocked person or person seeking the unblocking of a vessel."*[18]

## VI. The arguments in favor of the withdrawal of the Petitioner from the OFAC's list SDN:

## 1. Contradictions between the European Union and the OFAC on the Officer exercising command and operational control over the troops of the Republican Guard:

25.   The European Council has similar powers to those of the OFAC to take restrictive measures, to freeze assets and to prohibit travel to European states with regard to foreign personalities, which, according to their assessment, seriously undermine the principles Universal human rights and democracy.[19]

26.   Most recently, the European Council, after many months of investigations, examined the situation in the Democratic Republic of Congo for the same period of time as that referred to the OFAC's decision to include the name of the Petitioner in the SDN List.[20]

27.   But contrary to the findings of the OFAC, the European Council determined that someone else was assuming the command and operational control of the

---

[18] *ELECTRONIC CODE OF FEDERAL REGULATIONS*
*HTTPS://WWW.ECFR.GOV/CGI-BIN/TEXT-*
*IDX?SID=FE3173158ECEE72AEC074650166D291A&MC=TRUE&NODE=PT31.3.501&RGN=DIV5#SE31.*
*3.501_1807*
[19] See for instance the « Journal officiel de l'Union européenne », *DÉCISION (PESC) 2016/2231 DU CONSEIL du 12 décembre 2016modifiant la décision 2010/788/PESC concernant l'adoption de mesures restrictives à l'encontre de la République démocratique du Congo*

http://eur-lex.europa.eu/legal-content/FR/TXT/?uri=uriserv:OJ.L1.2016.336.01.0007.01.FRA&toc=OJ:L:2016:336l:FULL
[20] Idem

Republican Guard in the Congo during the years 2016 and 2017 **not the Petitioner, Mr. François OLENGA TETE:**

> "*As commander of the Republican Guard (GR), <u>Ilunga Kampete was responsible for the GR units deployed on the ground ... in Kinshasa</u> "(see European Council Decision (PESC) 2016/2231 of the 12th of December 2016 amending the Decision 2010 / 788 / PESC concerning the imposition of restrictive measures against the Democratic Republic of the Congo and the European Council implementing decision (PESC) 2017/905 of the 29th of May 2017)"*[21]

28. This argument does not mean that the Petitioner acknowledges the allegations of human rights violations attributed to the troops of the Republican Guard by the OFAC, but merely precise that Mr. Francois OLENGA TETE cannot be held responsible for the Republican Guards actions in any event.

**<u>2. The Order (Ordonnance) No. 13/063 of 17 June 2013 on the organization and functioning of the Republican Guard adequately demonstrates that the operations of this unit are the sole responsibility of the Commander of the Republican Guard and not of the Petitioner, Mr. François OLENGA TETE</u>**:[22]

29. The relevant legal texts indicate clearly that the republican guard has its own command and its own staff or head quarter:

> « *Article 5 :* "*La Garde républicaine comprend :*
>
> > 1. *Un commandement*
> > 2. *Un état-major ;*
> > 3. *Une unité Quartier Général ;*

---

[21] Journal officiel de l'Union européenne, DÉCISION (PESC) 2016/2231 DU CONSEIL du 12 décembre 2016modifiant la décision 2010/788/PESC concernant l'adoption de mesures restrictives à l'encontre de la République démocratique du Congo
http://eur-lex.europa.eu/legal-content/FR/TXT/?uri=uriserv:OJ.LI.2016.336.01.0007.01.FRA&toc=OJ:L:2016:336I:FULL
[22] See attached Annex 1

4. *Des unités combattantes ;*
5. *Des unités d'appui ».*

*Article 11 : « Il est place à la tête de la Garde républicaine un Officier Général portant le titre de commandant de la Garde républicaine ».*

*Article 12 : « Le commandant de la Garde républicaine et ses adjoints sont nommés et, le cas échéant, relevés ou révoqués de leurs fonctions par Ordonnance du Président de la République, sur proposition du Gouvernement, délibérée en Conseil des Ministres, le Conseil Supérieur de la Défense entendu »*

*«Article 13 : « Le commandant de la Garde républicaine a pour attributions :*
*- Assurer le bon fonctionnement de l'unité sous son commandement ;*
*- Accomplir les missions relevant de son unité »[23]*

30.  All operations carried out by combat units and support units are the responsibility of the Commander of the Republican Guard who is solely responsible for the proper functioning of the units under his command and for carrying out the tasks of those units.[24]

---

[23] See Attached Annex 1 with the translation in English of the relevant articles of **The Order (Ordonnance) No. 13/063 of 17 June 2013 on the organization and functioning of the Republican Guard:**

*"Article 5:" The Republican Guard includes:*
*- A Commandment*
*- A headquarter;*
*- A headquarters unit;*
*- Combatant units;*
*- Support units ".*
*Article 11: "There shall be at the head of the Republican Guard a General Officer bearing the title of Commander of the Republican Guard."*

*Article 12: "The commander of the Republican Guard and his deputies shall be appointed and, if necessary, relieved or removed from office by order of the President of the Republic, upon proposal of the Government, deliberated in the Council of Ministers, the High Council of The Defense "*

*"Article 13:" The commandant of the Republican Guard has the following remit:*
*- Ensure the proper functioning of the unit under its command;*
*- To carry out the tasks of his unit*

[24] Idem, article 13

31.   The Republican Guard has its berets, its charter, its uniform and its command distinct from the others.

32.   It is evident that military doctrine and practice do not accommodate two parallel commandments on the same unit.[25]

### 3. The Presidential order appointing ILUNGA KAMPETE Indicates that the Petitioner, Mr. François OLENGA TETE is not the commander of the Republican Guard; There is an Error on the Identity:[26]

33.   The Presidential Order appointing ILUNGA KAMPETE as "Commandant de la Garde républicaine" indicates that the commander of the Republican Guard is General ILUNGA KAMPETE. The identity of the Commander of Republican Guard should not be confused: the name "ILUNGA" is not to be confused with "OLENGA" and the post-name "KAMPETE" is not to be confused with "TETE".

### 4. The Order (ordonnance) No. 14/036 of the 16th of September 2014 on the organization and functioning of the Military House of the Head of State does not give any assignment of control or command over the unit of the Republican Guard to the Head of the Military House:[27]

---

[25] Colonel Ian Hope, *UNITY OF COMMAND IN AFGHANISTAN: A FORSAKEN PRINCIPLE OF WAR*: "Unity of Command: Unity of command is best achieved by vesting a single commander with requisite authority". —Principles of War 19541, page 1
https://ssi.armywarcollege.edu/pdffiles/PUB889.pdf
[26] See attached Annex 2

[27] See attached  Annex 3

DRC-16433 0043

34.   It is apparent from the relevant legal texts that the head of the Military House is essentially limited to a role of conception, analysis and advice to the Head of State on matters related to the defense and security of the country:

> « Article 3 :
>
>> *"Il (le chef de la Maison Militaire) tient quotidiennement le Président de la République informé de la situation militaire et sécuritaire du pays.*
>>
>> *Dans le cadre de l'accomplissement de sa mission, il :*
>>
>>> *- Assiste le Président de la république dans la conception de la politique de défense et de sécurité du pays.*
>>>
>>> *- Etudie et émet des avis sur toute question lui soumise par le Président de la République."* »[28]

35.   It is important to emphasize that defense policy is defined as the defense system chosen by the State and best responding to the needs of securing the national territory, the institutions, the population and its property (see Article 2, Paragraph 4 of the Organic Law on the Organization and Functioning of the Armed Forces of D.R.Congo).[29]

36.   The Military House of the Head of State is not in the chain of command of the Army. When there are closures or attacks, The Military House is not

---

[28] See   Attached Annex 3 with the translation in English of the relevant article of **The Order (ordonnance) No. 14/036 of  the 16th of  September 2014 on the organization and functioning of the Military House of the Head of State:**

*Article 3:*
*"He (the head of the Military House) keeps daily the President of the Republic informed of the military and security situation of the country.*
*Within the framework of the accomplishment of his mission, He:*
*- Assists the President of the Republic in the conception of the country's defense and security policy.*
*- Reviews and issues opinions on any matter submitted to it by the President of the Republic. "*
[29] **See attached Annex 4**

DRC-16433 0044

previously informed, nor associated in the conception of the operations plans, nor with the logistics.

37.    The Military House does not have maneuver units. It constitutes a distinct body different from the Republican Guard. The Commandant of the Military House has only a small cabinet, a few departments, a training center and a college of officers.

38.    The Republican Guard has no operational collaboration with the Military House of the Head of State. The Republican Guard has no hierarchical relationship with the Military House of the Head of State. The Military House of the Head of State has no power over the Republican Guard. The only link which exists between the Republican Guard and the Military House of the Head of State is the academic training and the recycling of units, in relation only with the training center of the Military House:

> « Article 13 : "Le centre d'instruction assure la formation et le recyclage des unités des Forces Armées en général, et celles de la Garde Républicaine en particulier.
>
> Il comprend un Commandant du Centre, un état*major, un pool des instructeurs et une unité de défense.»[30]

39.    The instruction given to the military under the supervision of the Military House is part of the main principles of the Congolese Armed Force:

---

[30] See Attached Annex 3 with the translation in English of the relevant article of **The Order (ordonnance) No. 14/036 of the 16th of September 2014 on the organization and functioning of the Military House of the Head of State:**

Article 13: "The training center shall provide training and retraining for units of the Armed Forces in general, and those of the Republican Guard in particular.
It has a Commandant of the Center, a staff, a pool of instructors and a defense unit"

*"The Armed Forces of the Democratic Republic of Congo are a national, republican, apolitical army and subject to civil authority.*
*The Armed Forces ensure the promotion and protection of human rights "(Article 3 of the Organic Law on the Organization and Functioning of the Armed Forces)"*
*Under the conditions established by the law, the Armed Forces of the Democratic Republic of Congo shall participate in economic, social and cultural development and in the protection of persons and their property during peacetime.*

*The armed forces shall ensure the protection of persons and their property, as well as the interests of the country both within and outside the national territory in time of war or in the proclamation of "état de siège", state of emergency or requisitioning of the Armed Forces.*

*The Armed Forces also participate in relief operations in the event of disasters and natural disasters, in accordance with the law.*

*The Armed Forces also participate in relief operations in the event of disasters or natural disasters, in accordance with the law.*
*They carry out humanitarian missions, peacekeeping and conflict resolution within the framework of the United Nations, the African Union, and the bilateral agreements binding the Democratic Republic of Congo"(Article 5 of the Organic Law on the Organization and Functioning of the Armed Forces)."*[31]

40. Mr. François OLENGA TETE, the Petitioner, as the head of the Military House does not command any unit. He cannot give orders to the Republican Guard; such orders would be illegal under the relevant legal texts, unless the presidential order (ordonnance) establishing the duties of the head of the Military House is amended.

41. The Petitioner, Mr. François OLENGA TETE, never had to order the arrest of civilians. Moreover, it is not within the competence of the Military House to deal with the supervision of civilians demonstrations which is the

---

[31] See Attached Annex 4

responsibility of the police. The Military House does not know the plan of supervision of civilians' demonstrations and even if there is a special need of the Army intervention, the Military House is not associated or involved in such activities.

42.   Finally, it should be pointed out that the head of the Military House is not a member of the Military High Command and as such has no voting rights in their decision-making meeting. The Article 23 of Organic Law N ° 12/001 of 27 June 2012 on the organization and functioning of the Higher Council of the Defense demonstrates that the Military House is not part of the High  Military Command in the Democratic Republic of Congo.[32]

43. Where a misuse of power can be inferred from the absence of reasons, the duty to give reasons will be necessary. In *Padfield v. Minister of Agriculture, Fisheries and Food*, [1968] 1 All E.R. 694 HL, although the relevant Act did not expressly provide for reasons to be given, it was said, *obiter*, that if no reason was given, the court might infer no good reason existed.[33]

44. However, this position was restricted in the criticized case of *Lonrho plc v. Secretary of State for Trade & Industry* [1989] 2 All E.R. 609. In this case, the Minister's decision not to refer a take-over bid was challenged for irrationality.  The House of Lords said:

> "*The absence of reasons for a decision where there is no duty to give them cannot of itself provides any support for the suggested irrationality of the*

---

[32] See attached Annex 5

[33] Ms Jamala Ali, <u>DUTY TO GIVE REASONS - THE WAY FORWARD,</u> The New Guyana Bar Review Volume 2 Issue 1: May 2008

http://www.guyaneselawyer.com/article_dutytogivereasons.html

*decision. The only significance of the absence of reasons is that if all the other known facts and circumstances point overwhelmingly in favor of a different conclusion, the decision-maker who has given no reasons cannot complain if the court draws the inference that he had no rational reason for his decision."[34]*

## RELIEF SOUGHT:

45.   The Petitioner respectfully requests the OFAC to grant the present Request and to allow it to the following extent:

(a)  To disclose to the Petitioner the full and detailed reasons evidence underlying the factual and legal finding of the OFAC decision, as well as the evidentiary memorandum;

(b)  To Convene a hearing or interview, at the convenience of OFAC, with the   Representative of the Petitioner, Mr. Aimé KILOLO-MUSAMBA, in order to answer any specific questions from the OFAC and to provide additional confidential evidence if needed   to demonstrate the insufficient basis for the designation of the Petitioner in OFAC List SDN;

(c)  TO RECONSIDER THE OFAC' S DETERMINATION AND TO REMOVE THE NAME OF THE PETITIONER, Mr. FRANCOIS OLENGA TETE, FROM THE OFAC SANCTIONS LIST NAMED "SPECIALLY   DESIGNATED   NATIONALS   AND   BLOCKED PERSONS LIST (SDN List)".

Respectfully submitted;

---

[34] Idem

Me Aimé KILOLO-MUSAMBA

The Representative of the Petitioner

Dated this 24 June 2017,

At Kinshasa, the Democratic Republic of Congo

# REPRESENTATION MANDATE

I, **François OLENGA TETE** , born at Kindu (Maniema, D.R.Congo) on October 9, 1948, Passport/ID No. *OP.000.1030*, of Congolese Nationality, hereby nominate Attorney **Aimé KILOLO MUSAMBA** of the Brussels Bar, Lubumbashi Bar and International Criminal Court Counsel, to act on my behalf and represent me in all matters pertaining to the filing of the Petition for my Removal from the OFAC List (Department of the Treasury of the U.S.A.) named " Specially Designated Nationals and Blocked Persons List, SDN List".

In order to enable him to pursue this mandate, I hereby authorize **Aimé KILOLO MUSAMBA,** born in Kinshasa (D.R.Congo)  on 1 january 1972, to represent me and take all reasonable legal and administrative steps in my name in order to remove me from the SDN List in the manner which is consistent with the Law and the Code of Federal Regulations.

(Name and Signature)

20 Juin 2017

(Date)

Adresse / Address :

AVENUE FREDERICK N°12 Q/KIMPE CINGALIEMA

KINSHASA

COD REP DEM CONGO

Profession / occupation :

HAUT FONCTIONNAIRE

Signature du titulaire / Signature of holder

Signature de l'autorité d'émission / signature of Issuing authority

RÉPUBLIQUE DÉMOCRATIQUE DU CONGO - DEMOCRATIC REPUBLIC OF THE CONGO

PASSEPORT DIPLOMATIQUE
DIPLOMATIC PASSPORT

Type / Type
PD

Code / Code du pays / Country Code
COD

Nom / Surname
OLENGA

Prénom / Prénoms
Given names
FRANCOIS

Nationalité / Nationality
CONGOLAISE

Date de naissance / Date of birth
09/10/1948

Sexe / Sex
M

Date de délivrance / Date of issue
27/08/2016

Lieu de naissance / Place of birth
KINDU

Date d'expiration / Date of expiry
28/08/2021

N° passeport / Passport n.
1100061403

Autorité émettrice / Issuing authority
MINAFFET

PDCODOLENGA<<FRANCOIS<TETE<<<<<<<<<<<
DP00010306C0D4810092M2108265110061403<<<<08

DRC-16433 0051



CE PASSEPORT EST LA PROPRIÉTÉ
DE LA RÉPUBLIQUE DÉMOCRATIQUE DU CONGO

This passport is the property of
the Democratic Republic of the Congo

Toutes les autorités étrangères sont priées de bien
vouloir laisser passer librement le titulaire
du présent passeport et de lui prêter
aide et protection en cas de besoin.
All authorities of Foreign States are hereby
requested to allow the bearer to pass freely
without hindrance and to afford him or her every
assistance and protection which he or she may need.

# RÉPUBLIQUE DÉMOCRATIQUE
# DU CONGO
# DEMOCRATIC REPUBLIC OF THE CONGO



## PASSEPORT DIPLOMATIQUE
## DIPLOMATIC PASSPORT

 Ferrari & Associates, P.C.

1455 Pennsylvania Ave., NW
Suite 400
Washington, DC 20004
Tel. 202-280-6370
Fax. 877-448-4885

October 4, 2017

**SENT VIA EMAIL AND FEDERAL EXPRESS**

Office of Global Targeting
Office of Foreign Assets Control
United States Department of the Treasury
1500 Pennsylvania Ave., NW
Treasury Annex
Washington, D.C. 20220

Re:   **Letter from François Olenga Regarding Legal Representation**

Dear Sir or Madam:

This letter serves as notice to the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") that at this time Ferrari Legal P.C., d/b/a Ferrari & Associates, P.C. is the sole law firm authorized to provide legal representation on my behalf before the agency.   Any other individual and/or law firm representing themselves as my legal representative, including, but not limited to, Aime Kilolo, in matters before OFAC is not authorized to do so and should be ignored by the agency.

In addition, to the extent that OFAC has shared information relating to my designation with Aime Kilolo or any other individual and/or law firm representing themselves as my legal representative, or to the extent that any information was shared with OFAC by such persons, this letter serves as authorization to the agency to disclose any such information to Ferrari Legal, P.C., d/b/a Ferrari & Associates, P.C.  By signing below, I certify that Ferrari Legal, P.C. d/b/a Ferrari & Associates, P.C. is currently my sole authorized legal representative in all matters before OFAC, and that any information and/or documents that OFAC may have shared with other individuals and/or law firms, or which were shared with OFAC, are authorized for disclosure to them.

François Olenga



DEPARTMENT OF THE TREASURY
WASHINGTON, D.C.

Case ID: DRC-11441

Erich C. Ferrari, Esq.
Ferrari & Associates, P.C.
1455 Pennsylvania Avenue, NW
Suite 400
Washington, DC 20004

JAN 1 0 2018

Dear Mr. Ferrari:

This letter responds to your request dated June 24, 2017 submitted to the Office of Foreign
Assets Control (OFAC) of the U.S. Department of the Treasury on behalf of your client, François
Olenga Tete (Mr. Olenga) for reconsideration of your client's designation pursuant to Executive
Order 13413 of October 31, 2006 "Blocking Property of Certain Persons Contributing to the
Conflict in the Democratic Republic of the Congo," as amended by E.O. 13671 of July 8, 2014
"Taking Additional Steps to Address the National Emergency With Respect to the Conflict in the
Democratic Republic of the Congo."

In order to assist OFAC in properly evaluating your petition, we ask that you provide detailed,
narrative responses to the following questions. Please provide your responses in a signed,
original statement submitted with documentation in support of the answers given. Original
statements and documents prepared in a language other than English should be accompanied by
English translations.

1. <u>English Translations</u>: Please provide English translations of the French-language
   documents provided to OFAC.

2. <u>Current Role</u>: Please describe Mr. Olenga's current role in the Government of the DRC,
   including information as to any official or unofficial responsibilities and duties. Please
   explain where Mr. Olenga fits in the government hierarchy, identify Mr. Olenga's direct
   supervisors and subordinates, and provide further detail on Mr. Olenga's role in relation
   to the Military High Command and Republican Guard. Please describe any
   responsibilities Mr. Olenga has over other DRC security services.

3. <u>Republican Guard</u>: Please further describe all command and administrative authority
   related to the Republican Guard, including all superior and subordinate commands and
   organizations.

4. <u>Ilunga Kampete</u>: Please explain to whom Ilunga Kampete reports and what Mr. Olenga's
   relationship is to him in terms of responsibilities and command.

5. <u>Policy and Opinions</u>: Please further describe Mr. Olenga's functions in providing the
   President of the DRC with assistance in the conception of defense and security policy and

1

opinions on matters submitted by the President of the DRC.  Please detail the President's authority to amend the duties of the head of the Military House.  Please describe the Military House's role in providing defense and security policy advice in internal security situations.

6.  <u>Additional Information</u>:  Provide any additional information you believe could assist OFAC in its review of Mr. Olenga's petition.

We may pose additional questions and documentary requests as we proceed.  Please direct all communications regarding your case to OFAC at the address or e-mail listed below, referring to Case ID: DRC-11441.  Please note that OFAC encourages the use of the e-mail address as it serves as the more expeditious method of communication.

> Office of Foreign Assets Control
> U.S. Department of the Treasury
> ATTN:  Office of Global Targeting
> 1500 Pennsylvania Avenue, N.W. (Freedman's Bank Building)
> Washington, D.C.  20220
> Email: OFAC.Reconsideration@treasury.gov

Please respond to the questions above within 90 days.  In the event that you choose not to respond to this request, please reply to OFAC advising that no response will be forthcoming.  If you need an extension of time to respond to the questions listed in this letter, please notify OFAC, in writing, specifying how much additional time you will need. Failure to provide a response to this letter within 90 days of service may result in Treasury's denial and administrative closure of the matter, without prejudice to future requests.

We note that you have not requested an administrative record at this time, but in similar circumstances you have requested an administrative record simultaneously with a request for reconsideration. Please advise if you intend to request an administrative record.

Thank you for your cooperation in this matter.

> Sincerely,
>
> *Joshuaowlita for*
>
> Nikole Albowicz
> Assistant Director
> Counterterrorism, Human Rights, and
> Corruption Division
> Office of Foreign Assets Control

2

**Ferrari & Associates, P.C.**

1455 Pennsylvania Ave., NW
Suite 400
Washington, DC 20004
Tel. 202-280-6370
Fax. 877-448-4885

April 10, 2018

**SENT VIA EMAIL AND FEDERAL EXPRESS: # 8126 0280 7571**

ATTN: Nicole Albowicz
Assistant Director
Counterterrorism, Human Rights, and Corruption Division
Office of Global Targeting
Office of Foreign Assets Control
United States Department of the Treasury
1500 Pennsylvania Avenue, NW
Freedman's Bank Building
Washington, DC 20220
Email: OFAC.Reconsideration@treasury.gov

Re:   **Response to OFAC's January 10, 2018 Questionnaire—Executive Order 13413, as Amended by Executive Order 13671**
      *Francois Olenga   DRC-11441*

Dear Ms. Albowicz:

On June 1, 2017, acting pursuant to Section 1(a)(ii)(E) of Executive Order 13413 ("E.O. 13143"), as amended by Executive Order 13671 ("E.O. 13671"), the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") designated Francois Olenga ("Respondent") for purportedly being a leader of an entity that has, or whose members have, allegedly engaged in certain activities meeting the criteria for designation under E.O. 13413.[1] In its press release announcing Respondent's designation, OFAC alleged that Respondent was designated for "oversee[ing] the Republican Guard, an entity that has, or whose members have, engaged in actions or policies that undermine democratic processes or institutions in the [Democratic Republic of the Congo]."[2] By means of a prior submission to OFAC, Respondent sought the administrative reconsideration of his designation pursuant to the procedures identified at 31 C.F.R. § 501.807.[3] OFAC has assigned this reconsideration matter Case ID DRC-11441.

---

[1] PRESS RELEASE, *Treasury Sanctions Senior Congolese Official for Leading Republican Guard in Undermining Democratic Processes*, U.S. Dep't of Treasury, June 1, 2017, *available at* https://www.treasury.gov/press-center/press-releases/Pages/sm0100.aspx.
[2] *Id.*
[3] OFAC opened this reconsideration matter following correspondence from Aime Kilolo.

On January 10, 2018, OFAC sent undersigned counsel a questionnaire seeking information and/or documents responsive to a series of questions relevant to the agency's consideration of Respondent's reconsideration request. Below are responses to those inquiries, as well as a factual and legal analysis underlining why Respondent's designation should be rescinded.[4]  Respondent respectfully reserves the right to supplement this initial response to OFAC's questionnaire with additional information and documents responsive to OFAC's queries as such information becomes available.

I.  **Response to Questionnaire**

1.  <u>English Translations</u>:  Please provide English translations of the French-language documents provided to OFAC.

    **RESPONSE:**  Respondent is herein providing English-language translations of the following documents: DRC Ordinance No. 014/036 of September 16, 2014 Related to the Organization and Functioning of the Military House of the President of the Republic, and DRC Ordinance No. 13/063 of June 17, 2013 Related to the Organization and Functioning of the Republican Guard.[5]  Due to the change in counsel, Respondent respectfully requests that OFAC review these specific documents, as they are directly relevant to Respondent's reconsideration case.

    Documents previously submitted but not herein translated should be disregarded for purposes of Respondent's reconsideration matter.   If Respondent intends for OFAC to consider such material, Respondent will provide English-language translations in a supplemental response to this questionnaire.

2.  <u>Current Role</u>:   Please describe Mr. Olenga's current role in the Government of the DRC, including information as to any official or unofficial responsibilities and duties.  Please explain where Mr. Olenga fits in the government hierarchy, identify Mr. Olenga's direct supervisors and subordinates, and provide further detail on Mr. Olenga's role in

---

[4] Because this response contains business information and/or other information of a sensitive nature, undersigned counsel respectfully requests that OFAC treat this correspondence confidentially.  If OFAC believes that it is required to release this document or any of the information contained herein to the public pursuant to the Freedom of Information Act ("FOIA") or any other federal law, please notify undersigned counsel as soon as possible. Undersigned counsel intends to provide additional information in support of this request for confidentiality.

[5] *See* Exhibit A – Ordinance No. 014/036 of September 16, 2014 Related to the Organization and Functioning of the Military House of the President of the Republic; Exhibit B – Ordinance No. 13/063 of June 17, 2013 Related to the Organization and Functioning of the Republican Guard.

DRC-16433 0060

relation to the Military High Command and Republican Guard. Please describe any responsibilities Mr. Olenga has over other DRC security services.

**RESPONSE:** Respondent is the Commander of the Military House of the President of the Republic.[6] In this role, Respondent is tasked with "keep[ing] the President abreast of the military and security situation of the [DRC]," including by "assist[ing] the President...in the design of the political and defense policy of the country" and "the handling of all issues related to the defense and security of the [DRC]."[7] In addition, Respondent is charged with "evaluat[ing] the operationality of the units of the Armed Forces [and] the Congolese National Police," and "exploit[ing], analyz[ing], and evaluat[ing] all the military intelligence, political, scientific, and other information related to the national defense and territorial security." These duties are outlined in the specific detail in DRC Ordinance No. 14/036 of September 16, 2014 Related to the Organization and Functioning of the Military House of the President of the Republic, particularly in Article 3 of the said Ordinance.

Respondent has no relationship with the Military High Command of the Republican Guard or with the Republican Guard, and Respondent has no authority over or responsibilities vis-à-vis any other elements of the DRC's security services.[8] Further, Respondent is not an member of the DRC Government, as the Military House outside the purview of the DRC Government (i.e., serving as an outside advisor to the President of the DRC Government). Article 3 of Ordinance No. 13/036, dated September 16, 2014, expressly delimits the scope of Respondent's duties as

---

[6] Respondent has served in this position since his appointment per DRC Ordinance 14/058 of September 18, 2014.

[7] Exhibit A   Ordinance No. 014/036 of September 16, 2014 Related to the Organization and Functioning of the Military House of the President of the Republic.

[8] The Republican Guard - including the Military High Command of the Republican Guard —is under the control and supervision of the President of the Democratic Republic of the Congo, as outlined in Article 10 of Ordinance No. 13/063 dated June 17, 2013. Article 10 states, in translation:

"From the operational perspective, the Command of the Republican Guard falls under the jurisdiction of the President of the Republic. From an administrative and logistical perspective, the Republican Guard is placed under the command of the Chief of Staff."

The Military House has no control or supervision over the Republican Guard of its Military High Command. No legal provision of the DRC permits the Military House to exercise any such authorities over the Republican Guard. Exhibit A—Ordinance No. 014/036 of September 16, 2014 Related to the Organization and Functioning of the Military House of the President of the Republic.

DRC-16433 0061

Commander of the Military House, including duties related to assisting the DRC President in the "design of the political and defense policy of the country" and in the administration of "all issues related to the defense and security of the country."[9]  Such duties do not include supervision over the Republican Guard, the High Military Command of the Republican Guard, or any other security services of the DRC.

Respondent reserves the right to provide additional information relating to this question in a future supplemental response to OFAC's questionnaire.

3. <u>Republican Guard:</u>   Please further describe all command and administrative authority related to the Republican Guard, including all superior and subordinate commands and organizations.

**RESPONSE:**  Respondent does not exercise authority over or otherwise supervise the Republican Guard.  The Commander of the Republican Guard reports directly to the President of the Republic regarding the operations of the Republican Guard and directly to the Chief of General Staff regarding administrative and logistical matters.[10]  Respondent, acting as the Commander of the Military House, does not operate within this chain of command and thus is unable to describe the command and administrative authorities of the Republican Guard.

4. <u>Ilunga Kampete:</u>  Please explain to whom Ilunga Kampete reports and what Mr. Olenga's relationship is to him in terms of responsibilities and command.

**RESPONSE:**  Ilunga Kampete reports directly to President Kabila, as outlined in Article 12 of Ordinance No. 13/063 dated June 17, 2013. Respondent has no relationship with Mr. Kampete, as the Republican Guard is under the exclusive authority of the President of the Democratic Republic of the Congo.[11]

5. <u>Policy and Opinions:</u>  Please further describe Mr. Olenga's functions in providing the President of the DRC with assistance in the conception of

---

[9] Exhibit A  Ordinance No. 014/036 of September 16, 2014 Related to the Organization and Functioning of the Military House of the President of the Republic.
[10] Exhibit B  Ordinance No. 13/063 of June 17, 2013 Related to the Organization and Functioning of the Republican Guard.
[11] *Id.*

DRC-16433 0062

defense and security policy and opinions on matters submitted by the President of the DRC. Please detail the President's authority to amend the duties of the head of the Military House. Please describe the Military House's role in providing defense and security policy advice in internal security situations.

**RESPONSE:** DRC Ordinance No. 14/036 of September 16, 2014 identifies the scope of Respondent's functions in his capacity as Commander of the Military House. Respondent acts consistent with the scope of the authorities outlined in DRC Ordinance No. 14/036. Article 3 of Ordinance No. 14/036 states, in substantive part, that the Commander of the Military House is charged with "keep[ing] the President abreast of the military and security situation of the [DRC]," including by "assist[ing] the President in the design of the political and defense policy of the country" and the "handling of all issues related to the defense and security of the [DRC]."[12] Respondent's responsibilities as the Commander of the Military House include "evaluat[ing] the operationality of the units of the Armed Forces [and] the Congolese National Police" and "exploit[ing], analyz[ing], and evaluat[ing] all the military intelligence, political, scientific, and other information related to national defense and territorial security."[13] The full scope of Respondent's authorities and responsibilities as Commander of the Military House are identified in Article 3 of DRC Ordinance No. 14/036.

The President has no express authority to amend the duties imposed on the Commander of the Military House by ordinance. Because Respondent is tasked with advising the President on the country's military affairs at the President's leisure, the President can ultimately decide whether to adhere to the advice provided by the Commander of the Military House.

---

[12] Exhibit A   Ordinance No. 014/036 of September 16, 2014 Related to the Organization and Functioning of the Military House of the President of the Republic. The Ordinance does not limit the Military House's advisement to external threats to the country.

[13] *Id.*

DRC-16433 0063

## II.   Legal Background

### A.   Statutory and Regulatory Framework

#### i.   International Emergency Economic Powers Act

On October 28, 1977, the President signed into law the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq*.[14] IEEPA was enacted to provide authority for the President to impose economic sanctions "to deal with any unusual or extraordinary threat, which has its source in whole or in substantial part outside the United States, to the national security, foreign policy, and economy of the United States, if the President declares a national emergency with respect to such threat."[15] Such authorities include, but are not limited to, the power to "regulate,...prevent or prohibit,...any importation or exportation of, or dealing in,...transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States."[16] The President is authorized to promulgate Executive orders to impose such sanctions and to issue regulations to exercise the authorities identified in IEEPA.[17]

#### ii.   Executive Order 13413 and the Democratic Republic of the Congo Sanctions Regulations, 31 C.F.R. Part 547

On October 27, 2006, acting pursuant to IEEPA, the President issued Executive Order 13413, "Blocking Property of Certain Persons Contributing to the Conflict in the Democratic Republic of the Congo." This Order blocked all property and interests in property that are in, or that otherwise come within, the United States or the possession or control of a U.S. person,[18] wherever located, of the persons listed in the Annex to E.O. 13413, as well as any person determined by the Secretary of the Treasury, acting in consultation with the Secretary of State, to have engaged in certain identified activities in the Democratic Republic of the Congo. Section 5 of E.O. 13413 authorized the Secretary of the Treasury, acting in consultation with the Secretary of State, to promulgate rules and regulations to implement the provisions of the Order. In addition, Section 7 of E.O. 13413 authorized the Secretary of the Treasury, acting in consultation

---

[14] IEEPA serves as the statutory basis for the Democratic Republic of the Congo Sanctions Regulations, 31 C.F.R. Part 547, as well as the Executive Orders underlying those regulations.

[15] 50 U.S.C. § 1701(a).

[16] 50 U.S.C. § 1702(a)(1)(B).

[17] 50 U.S.C. § 1704.

[18] For purposes of E.O. 13413, a "United States person" is defined as a U.S. citizen, permanent resident alien, entity organized under the laws of the United States or any jurisdiction within the United States (including foreign branches), or any person in the United States. *See* Section 3(c) of E.O. 13413 (2006). This definition is consistent with that later promulgated in the Democratic Republic of the Congo Sanctions Regulations, 31 C.F.R. Part 547. *See e.g.*, 31 C.F.R. § 547.312.

DRC-16433 0064

with the Secretary of State, to determine the circumstances and to take any necessary action to give effect to such determination that circumstances no longer warrant the blocking of property and interests in property of a person listed in the Annex to the Order.

On May 28, 2009, OFAC—acting under a delegation of authority from the Secretary of the Treasury—issued the Democratic Republic of the Congo Sanctions Regulations ("DRC Sanctions Regulations"), 31 C.F.R. Part 547, which implemented and codified the provisions of E.O. 13413. 31 C.F.R. § 547.201 mandates that all property and interests in property of certain designated parties that are in the United States, that hereafter comes within the United States, or that are or hereafter come within the possession or control of a U.S. person are blocked and cannot be transferred, paid, exported, withdrawn, or otherwise dealt in. Such designated parties include all persons listed in the Annex to E.O. 13413, as well as any person determined by the Secretary of the Treasury, acting in consultation with the Secretary of State:

(1)     To be a political or military leader of a foreign armed group operating in the Democratic Republic of the Congo that impedes the disarmament, repatriation, or resettlement of combatants;

(2)     To be a political or military leader of a Congolese armed group that impedes the disarmament, demobilization, or reintegration of combatants;

(3)     To be a political or military leader recruiting or using children in armed conflict in the Democratic Republic of the Congo in violation of applicable international law;

(4)     To have committed serious violations of international law involving the targeting of children in situations of armed conflict in the Democratic Republic of the Congo, including killing and maiming, sexual violence, abduction, and forced displacement;

(5)     To have directly or indirectly supplied, sold, or transferred to the Democratic Republic of the Congo, or been the recipient in the territory of the Democratic Republic of the Congo of, arms and related materiel, including military aircraft and equipment, or advice, training, or assistance, including financing and financial assistance, related to military activities;

(6)     To have materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, the activities described above, or any person whose property and interests in property are blocked pursuant to § 547.201(a); and

(7)     To be owned or controlled by, or acting or purporting to act for or on behalf of, directly or indirectly, any person whose property and interests in property are blocked pursuant to § 547.201(a).

DRC-16433 0065

The names of persons whose property and interests in property are blocked pursuant to §
547.201(a) are incorporated into OFAC's SDN List with the identifier "[DRCONGO]."[19]

On July 8, 2014, acting pursuant to IEEPA, the President issued Executive Order 13671,
"Taking Additional Steps to Address the National Emergency With Respect to the Conflict in the
Democratic Republic of the Congo," which served to amend E.O. 13413.   E.O. 13671
promulgated new criteria under which the Secretary of the Treasury, acting in consultation with
the Secretary of State, could designate an individual or entity and impose blocking sanctions on
such person.  Pursuant to these new criteria, the Secretary of the Treasury could designate, *inter
alia*, any person determined:

- To be a political or military leader of a foreign armed group operating in the
  Democratic Republic of the Congo that impedes the disarmament,
  demobilization, voluntary repatriation, resettlement, or reintegration of
  combatants;
- To be a political or military leader of a Congolese armed group that impedes
  the disarmament, demobilization, voluntary repatriation, resettlement, or
  reintegration of combatants;
- To be responsible for or complicit in, or to have engaged in, directly or
  indirectly, any of the following in or relation to the Democratic Republic of
  the Congo:
  - Actions or policies that threaten the peace, security, or stability of the
    DRC;
  - Actions or policies that undermine democratic processes or institutions in
    the DRC;
- To be a leader of (i) an entity, including any armed group, that has, or whose
  members have, engaged in any of the activities described above or (ii) an
  entity whose property and interests in property are blocked pursuant to the
  Order;

    iii.    <u>Delisting Procedures</u>

Pursuant to 31 C.F.R. § 501.807, the "Reporting, Procedures, and Penalties Regulations,"
designated persons "may seek administrative reconsideration of his, her, or its designation...or
assert that the circumstances resulting in the designation no longer apply, and thus seek to have
the designation rescinded."  Specifically, blocked parties "may submit arguments or evidence
that the person believes establishes that insufficient basis exists for the designation."[20]

---

[19] *See* Note 1 to Paragraph (a) of 31 C.F.R. § 547.201.
[20] 31 C.F.R. § 501.807(a).

DRC-16433 0066

Alternatively, blocked parties "may [also] propose remedial steps on the person's part...which the person believes would negate the basis for designation."[21]

OFAC has published Frequently Asked Questions ("FAQs") regarding petitions for removal from its Specially Designated Nationals and Blocked Persons List ("SDN List"), which provide additional guidance relating to arguments that can be made by designated parties seeking rescission of their OFAC designation.[22]   Specifically, OFAC identifies "[s]ome examples of situations that may result in delisting," including: "a positive change in behavior, the death of an SDN, the basis for the designation no longer exists, or the designation was based on mistaken identity."[23]

      B.     *Legal Analysis*

          i.     <u>Basis and Criteria for Designation</u>

On June 1, 2017, acting pursuant to Section (a)(1)(E) of Executive Order 13413, as amended, OFAC designated Respondent for being the purported leader of the Republican Guard, an entity that is alleged to have, or whose members have, engaged in actions or policies that undermine democratic processes or institutions in the DRC.[24]   According to a press release announcing Respondent's designation, OFAC alleged that Respondent "serve[s] as [President] Kabila's personal military Chief of Staff as head of the Maison Militaire" and exerts "operational control over the Republican Guard [in this capacity]."[25]   More particularly, Respondent "oversee[s] security operations on behalf of President Kabila's efforts to suppress political opposition in the DRC," as the Republican Guard "has actively disrupted the political process in the DRC, including [by] harassing political rivals, targeting opposing political parties, and arbitrarily arresting and executing Congolese citizens."[26]   OFAC further alleged that Respondent "developed a plan to use the Republican Guard to disrupt opposition activities and financial support" and that the Republican Guard "monitored and threatened opposition members and critics of President Kabila," including by "allegedly attack[ing] and set[ting] fire to the headquarters of several political parties with cans of gasoline, hand grenades, and rocket-propelled grenades" in the wake of protests across Kinshasa in September 2016.[27]

---

[21] *Id.*

[22] Filing a Petition for Removal from an OFAC List, U.S. Dep't of Treasury, May 2, 2017, *available at* https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/petitions.aspx.

[23] *Id.*

[24] PRESS RELEASE, *Treasury Sanctions Senior Congolese Official for Leading Republican Guard in Undermining Democratic Processes*, U.S. Dep't of Treasury, June 1, 2017, *available at* https://www.treasury.gov/press-center/press-releases/Pages/sm0100.aspx.

[25] *Id.*

[26] *Id.*

[27] *Id.*

Undersigned counsel notes that Respondent has petitioned OFAC for copies of the administrative record underlying his designation, but that such record (or portions thereof) have not yet been available to Respondent. The administrative record may provide evidence to support OFAC's allegations regarding Respondent's conduct. Without such record (or portions thereof) apprising Respondent of the full basis for his designation, he is impaired in his ability to address the factual record supporting OFAC's determination.

ii.    Sufficiency of the Evidence

OFAC based its designation of Respondent on its determination that Respondent is the alleged leader of the Republican Guard, an entity that is alleged to have, or whose members have, engaged in actions or policies that undermine democratic processes or institutions in the DRC. For instance, OFAC's press release asserts that Respondent exercises "operational control over the Republican Guard [as the Commander of the Military House to the President of the Republic,]" and, as such, Respondent "developed a plan to use the Republican Guard to disrupt opposition activities and financial support," including by "monitor[ing] and threaten[ing] opposition members and critics of President Kabila."[28]

OFAC's factual predicate is in error, however, and there is an insufficient basis for Respondent's designation under E.O. 13413, as amended. As discussed above, Respondent does not exercise "operational control over the Republican Guard" in his capacity as the Commander of the Military House of the President of the Republic, as the duties of the Commander of the Military House do not include any authority over or responsibilities vis-à-vis the Republican Guard. The Republican Guard is directly answerable to the President of the Republic and the Chief of the General Staff. Respondent is not within the chain of command between the Republican Guard and the President of the Republic and exercises no control or authority over the Republican Guard. As such, OFAC's factual basis for the designation is erroneous. DRC law does not grant Respondent in his capacity as Commander of the Military House any such authority over the Republican Guard and Respondent has not acted contrary to DRC laws in his position as Commander of the Military House.

Because Respondent does not exercise de facto "operational control" or any other authority over the Republican Guard, OFAC is in error when it attributes actions of the Republican Guard to Respondent. Respondent lacks any jurisdiction over the Republican Guard and, as such, was in no position to command or otherwise advise the Republican Guard as to actions to be taken vis-à-vis the DRC political opposition. Respondent played no role in his capacity as the Commander of the Military House in advising the Republican Guard regarding actions taken in response to protests in Kinshasa in September 2016 or in any other matters. To

---

[28] *Id.*

the extent that OFAC has evidence to the contrary, Respondent urges the agency to identify such evidence so that Respondent can effectively respond to and rebut any evidence that he did exercise control or authority over the Republican Guard or participated in any suppression of opposition activities.

### III.     Conclusion

In light of the foregoing, Respondent respectfully requests that OFAC take immediate steps to rescind Respondent's designation under E.O. 13413, as amended, and remove Respondent's name from the SDN List. In undersigned counsel's view, and as evident from the documents provided herein, OFAC based its designation of Respondent on erroneous information that Respondent exercised operational control over the Republican Guard. Because Respondent exercises no such control and is not a leader of (or otherwise exercises authority over) the Republican Guard, the factual and legal basis for his designation is in error and his name must be removed from OFAC's SDN List at the earliest practical time.

Please forward all correspondence relating to this matter to:

Erich C. Ferrari
Ferrari & Associates, P.C.
1455 Pennsylvania Ave., NW
Suite 400
Washington, DC 20004

Thank you for your consideration. Respondent looks forward to OFAC's responses.

Sincerely,

Erich C. Ferrari

# EXHIBIT

# A

DRC-16433 0070

*Democratic Republic of Congo*

CABINET OF THE PRESIDENT OF THE REPUBLIC

*The Cabinet Director*

**ORDINANCE No 14/036 OF 16 SEPTEMBER 2014 RELATED TO**

**THE ORGANIZATION AND FUNCTIONING OF THE MILITARY HOUSE OF THE PRESIDENT OF THE REPUBLIC**

**The President of the Republic,**

Whereas the Constitution as amended by Act No 11/002 of 20 January 2011 related to the amendment of certain articles of the Constitution of the Democratic Republic of Congo of 18 February 2006, especially articles 79 and 191 thereof;

Whereas Organic Act No 11/012 of 11 August 2011 related to the organization and functioning of the Armed Forces, especially article 11;

Whereas  Act No 13/005 of 15 January 2013 related to the status of the military of the Armed Forces of the Democratic Republic of Congo, especially articles 1, 2, 3, and 73 thereof;

Whereas Ordinance No 12/007 of 11 June 2012 related to the organization and functioning of the Government, and the practical modalities for collaboration between the President of the Republic and the Government, as well as amongst members of the Government;

Reviewing Decree No 019/2003 of 02 March 2003 related to the organization and functioning of the Military House of the President

Taking into account the views of the High Defense Council

**NOW ORDAINS AS THUS**

**Chapter I: GENERAL PROVISIONS**

**Article 1:**

This Ordinance outlines the organization and the functioning of the special staff of the President of the Republic, hereunder referred to as the Military House.

**Article 2:**

The Military House of the President of the Republic (MM), which is a special staff of the President of the Republic, is the Military Cabinet of the President of the Republic.

It is led by an officer of general or superior rank known as the Commander of the Military House of the President of the Republic, assisted by two deputy Commanders of the Military House of the President of the Republic, also of general or superior rank.

The Commander of the Military House of the President of the Republic and his two deputies are appointed, relieved and, if necessary, dismissed by Ordinances of the President of the Republic.

Aimé ZONVENI BE LOVBE
Official Translator-Interpreter of the Courts of Kinshasa under Decree 1/0736/2007
English/French
bconveni@ats.cd
+243 81 99 249 40

I, the undersigned  AIMLE ZON  EN  BE LOVBE  Official Translator-Interpreter  of the Courts of
Kinshasa, Democratic Republic of Congo  for the English  and French  languages  do hereby  certi,
and attest the foregoing to be the true  and correct translation from the French into the English
language to the best of my  knowledge  and belief

Date    28 Augu t 2017                          Signature

The Commander of the Military House of the President of the Republic has the rank of a Minister while his two deputies have the rank of Vice-Ministers.

**Article 3:**

The Commander of the Military House leads and manages all the services of the Military House.

The Commander of the Military House keeps the President abreast of the military and security situation of the country.

The Commander of the Military House manages the personnel of the Military House and exercises the disciplinary power on these personnel, in compliance with the internal rules of procedures.

The Commander of the Military House manages the spending and the material and financial means availed to him/her.

As part of the duties of the Commander of the Military House, the latter:

- assists the President of the Republic in the design of the political and defense policy of the country;
- assists the President of the Republic in the handling of all issues related to the defense and security of the country;
- permanently evaluates the operationality of the units of the Armed Forces, the Congolese National Police, as well as the mindset of all troops;
- exploits, analyzes and evaluates all the military intelligent military, political, scientific and other information related to national defense and territorial security;
- gives views and considerations with a view to better guiding the President of the Republic on appointment at key positions with the Army, the Congolese National Police, the Intelligence Services and the National Services;
- gives views and considerations on the proposals for the purchase and acquisition of military and police materials and equipment;
- sees, in case of need, to the liaison between the President of the Republic, the Prime Minister, the Minister of National Defense and Former Combatants, the General Army Staff, the Ministries of Interior, Security, Decentralization and Traditional Affairs the Congolese National Police, Intelligence Services and the National Services; and
- studies and gives views on any matter submitted to the Commander of the Military House by the President of the Republic.

The Commander of the Military House instructs via decisions.

**Article 4:**

In the event of absence or incapacity to act, the Commander of the Military House is replaced by the higher ranking deputies.

**Chapter II: ORGANIZATION AND FUNCTIONING**

**Section 1: Organization**

**Article 5:**

Aimé ZONVENI BE LOMBE
Official Translator-Interpreter of the Courts of Kinshasa Under Decree N°0736/2007
English/French
zonveni@7d.co.cd
+243 21 99 249 47

I, the undersigned  AIME ZONVENI BE LOMBE  Official Translator-Interpreter of the Courts of Kinshasa, Democratic Republic of Congo  for the English and French languages do hereby certify and attest the foregoing to be the true and correct translation from the French into the English language to the best of my knowledge and belief.

Date :  28 August 2017                    Signature :

The Military House of the President of the Republic comprises:

- a  Command;
- a Cabinet;
- Departments;
- Instruction Centre;
- Group of Ordinance Officers;

The Command of the Military House of the President of the Republic is composed of the following:

- The Head of the Military House, with a special Staff composed of: one Assistant, one Private Secretary and one Aide-de-Camp;
- Two Deputy Heads of the Military House, one in charge of operations and intelligence, and the other in charge of administration and logistics, each having: an Assistant, a Private Secretary and an Aide-de-Camp.

**Article 6: The Cabinet**

The Cabinet has the following missions:

- assist the Commander of the Military House with the latter's attributions;
- provide substantiated views on cases submitted by the Commander of the Military House;
- finalize certain files prepared by the departments depending on the guidelines of the Commander of the Military House.

It comprises the following:

- one Lead Assistant of the Commander of the Military House;
- Assistants;
- a group of Legal Advisors;
- one Administrative Secretary;
- a Financial Service;
- a Health Service;
- a Strategic Service;
- a Protocol and Press Service;
- Special Services; and
- Aides-de-Camp

**Article 7:**

All members of the Cabinet are appointed by a Decision of the Commander of the Military House, subject to approval by the President of the Republic.

Assistants, Special Secretaries and Aides-de-Camp of Deputy Commanders of the Military House are appointed on proposal of the latter.

**Article 8:**

The Administrative Secretary has the following missions:

Aimé ZONVENI BE LOMBE
Official Translator-Interpreter of the Courts of Kinshasa under Decree N°0736/2007
English/French
azonveni@gtz.cd
+243 21 99 544 47

I, the undersigned, AIMÉ ZONVENI BE LOMBE, Official Translator-Interpreter of the Courts of Kinshasa, Democratic Republic of Congo, for the English and French languages do hereby certify and attest the foregoing to be the true  and correct translation from the French into the English language to the best of my knowledge and belief

Date:  28 August 2017                    Signature:

- receive, sort and register mails;
- prepare and see to the dispatch of documents;
- disseminate guidelines and instructions of the Commander of the Military House; and
- keep the filing of the Military House.

The Administrative Secretariat comprises:

- an IT Pool;
- a Filing Clerk;
- a Courier Officer; and
- an Indicator

**Article 9:**

The following Departments exist in the Military House:

- Organization, Instruction and Operations Department;
- Intelligence and Security Department;
- Administrative and Logistics Department

Each Department is headed by a high ranking officer known as the Head of Department. Each Head of Department is tasked with coordinating the activities of the sector placed under their authority.

Heads of Department and the Commander of the Instruction and Training Center are, if necessary, appointed, relieved and dismissed by an Ordinance of the President of the Republic.

**Article 10:**

The Operations, Organization and Instruction Department is tasked with the following:

- Evaluate the operational capacity of the units of the Armed Forces, the Congolese National Police, and the mindset of troops;
- See to the implementation of instructions and guidelines from the Supreme Commander of the Armed Forces of the Democratic Republic of Congo and of the Congolese National Police, in terms of organization, operations and instruction as well as for strategy;
- Facilitate liaison between the domain of operations, instructions and organization between the Military House and the Ministry of National Defense and Former Combatants, the General Army Staff of the Democratic Republic of Congo, the Forces, the Ministries in charge of Interior, Security, Decentralization and Traditional Affairs as well as the Congolese National Police.

It comprises the following three directorates:

- Operations Directorate;
- Organization Directorate; and
- Instruction and Training Directorate

**Article 11:**

The Intelligence and Security Department is tasked with the following:

Aimé ZONVENI BE LOMBE
Official Translator-Interpreter of the Courts of Kinshasa under Decree N°0736/2007
English/French
zonveni@gmail.com
+243 81 99 349 47

I, the undersigned, AIMÉ ZONVENI BE LOMBE, Official Translator-Interpreter of the Courts of Kinshasa, Democratic Republic of Congo, for the English and French languages, do hereby certify and attest the foregoing to be the true and correct translation from the French into the English language to the best of my knowledge and belief.

Date   28 Aug, 4 2017                     Signature

DRC-16433 0074

- Evaluate on a permanent basis domestic and foreign threats posing against the Democratic Republic of Congo and the President;
- Exploit, analyze and evaluate the intelligent information related to National Territory Defense and Security;
- Keep updated all security files on neighboring countries and other countries that are considered as being effectively and potentially hostile;
- Maintain updated the security files of high ranking officers in the Army, the National Police, the National Service, as well as the Intelligence service;
- Evaluate on a permanent basis the security situation of the units, the installations and equipment of the Army, the Congolese National Service, the National Service and the intelligence services; and
- Facilitate liaison between the Military House and the Intelligence Services.

It comprises the following directorates:

- Studies, Analyses and Evaluations Directorate;
- Documentation Directorate; and
- Military Security Directorate

**Article 12:**

The Administration and Logistics Department is tasked with the following:

- Maintain updated the administrative files of high ranking officers in the Army, the National Police, the National Service, as well as the Intelligence service;
- See to the management of the personnel of the Military House;
- Develop the guidelines of the Supreme Commander on the management of the civilian and military personnel of the Army, the Congolese National Police, the National Service and the Intelligence Services;
- Develop the guidelines of the Supreme Commander on the acquisition, purchase and management of military and police materials and equipment; and
- Verify the compliance of materials and equipment procurement contracts concluded by the Ministry of Defense, the Army Staff, the various Forces, the Congolese National Police, and the National Service.

It comprises the following directorates:

- Personnel Directorate;
- Material Directorate; and
- Technical Directorate

**Article 13: Instruction Center**

The Instruction Center provides the training and the refresher training to units of the Armed Forces in general, and those of the Republican Guard, in particular.

It comprises a Command Center, a Staff, a pool of instructors and a defense unit.

**Article 14:**

**Aimé ZONVENI BE LOMBE**
Official Translator-Interpreter of the Courts of Kinshasa under Decree n°0736/2007
English/French
zonveni@drc.cd
+249 81 50 249 47

I, the undersigned AIME ZONVENI BE LOMBE, Official Translator-Interpreter of the courts of Kinshasa, Democratic Republic of Congo for the English and French languages do hereby certify and attest the foregoing to be the true and correct translation from the French into the English language to the best of my knowledge and belief

Date: 28 August 2017                     Signature:

The Group of Ordinance Officers is composed of four Officers, representing each, respectively, the Ground Force, the Air Force, the Navy and the Congolese National Police.

They are appointed, relieved and dismissed, if necessary, by way of an Ordinance of the President of the Republic.

**Article 15:**

The Group of Ordinance Officers is supervised by the highest ranking officer or the most senior officer in the grade who will be bearing the title of Head of the Group of Ordinance Officers. This officer will be dispatching the tasks to the other members of the Group.

Ordinance Officers assist the President of the Republic during official and private ceremonies and during other audiences granted to personalities.

Ordinance Officers accompany the President of the Republic in all his/her displacements, both domestically and abroad.

**Chapter III: STATUS OF THE PERSONNEL**

**Article 16:**

The Personnel of the Military House of the President of the Republic is subjected to Act No 13/005 of 15 January 2013 related to the status of the military of the Armed Forces of the Democratic Republic of Congo, to the administration rules specific to the members of the Armed Forces as well as Act No 13/013 of 1 June 213 related to the status of the career personnel of the Congolese National Police.

The members of the Civilian Personnel of the Military House of the President of the Republic are appointed and, if necessary, relieved from their positions by the Commander of the Military House subject to approval by the President of the Republic.

They hail from the Public Service and as such are managed by the status of career personnel of the Civil Service, recruited on a contractual basis.

In this last case, the Head of the Military House shall determine the terms of reference for the recruitment and the contract that outlines the rights and obligations of the staff member.

**Article 17:**

However, taking into account the very specific nature of this service and the peculiarity of its missions, the contracted Personnel of the Military House shall enjoy the benefits granted by the President of the Republic.

**Article 18:**

The members of the Military House of the President of the Republic are requires, under all circumstances, to preserve the honor and dignity of their positions and see, during the reviews of files entrusted to them, to the interests of the State and to professional privacy.

**Article 19:**

Aimé ZONVENI BE LOMBE
Official Translator-Interpreter of the Courts of Kinshasa under Decree N°0786/2007
English/French
bzonvene@gl.cd
+243 21 59 249 47
I, the undersigned AIMÉ ZONVENI BE LOMBE, Official Translator-Interpreter of the Courts of Kinshasa, Democratic Republic of Congo, for the English and French languages do hereby certify and attest the foregoing to be the true and correct translation from the French into the English language to the best of my knowledge and belief

Date   28 August 2017        Signature

The members of the Military House must:

- Abstain from any attempt likely to compromise the dignity related to their positions or the position of the Military House;
- Comply with the instructions received as part of discharging their duties;
- Respect the ethics and good manners in the exercise of their duties

## Chapter V: The Budget

### Article 20:

The Military House of the President of the Republic runs, for its functioning, a budget which is included in the national budget.

### Article 21:

The Commander of the Military House and the persons specifically delegated by the latter to that effect have the power, within the budgetary allocation limitations and in strict compliance with the rules and regulations, to requisition and pay all expenses related to the functioning of the Military House.

## Chapter IV: Repealing and Final Provisions

### Article 22:

As part of implementation of this Ordinance, Internal Rules of Procedures shall be developed by the Commander of the Military House.

It shall come into force after the approval thereof by the President of the Republic.

All previous provisions contrary to this Ordinance are repealed.

### Article 23:

The Prime Minister, the Vice-Prime Minister, the Minister of National Defense and Former Combatants, the Minister of Interior, Security, Decentralization and Traditional Affairs as well as the Chief of Staff of the President of the Republic are tasked, each respectively, with implementing this Ordinance which comes in force on the date of the signing thereof.

Done at Kinshasa on 17 June 2013

**JOSEPH KABILA KABANGE**

**Augustin MATATA PONYO MAPON**

**Prime Minister**

Certified true copy
On 17 June 2013
Cabinet of the President of the Republic
GUSTAVE BEYA SIKU
Cabinet Director
*(Signed)*

Aimé ZONVENI BE LOMBE
Official Translator-Interpreter of the Courts of Kinshasa under Decree 170736/2007
English/French
Nzemaed2ucd
+243 21 99 249 47
I, the undersigned  AIMÉ ZONV ENI BE LOMBE  Official Translator-Interpreter  of the Courts of Kinshasa, Democratic Republic of Congo  for the English and French languages do hereby certify and attest the foregoing to be the true  and correct translation from the French into the English language to the best of my knowledge and belief

Date   28 August 2017                    Signature

# EXHIBIT

# B

DRC-16433 0078

*Democratic Republic of Congo*

CABINET OF THE PRESIDENT OF THE REPUBLIC

The Cabinet Director

**ORDINANCE No 13/063 OF 17 JUNE 2013 RELATED TO**

**THE ORGANIZATION AND FUNCTIONING OF THE REPUBLICAN GUARD**

**The President of the Republic,**

Whereas the Constitution as amended by Act No 11/002 of 20 January 2011 related to the amendment of certain articles of the Constitution of the Democratic Republic of Congo of 18 February 2006, especially articles 79 and 191 thereof;

Whereas Organic Act No 11/012 of 11 August 2011 related to the organization and functioning of the Armed Forces, especially articles 114 and 117 thereof;

Whereas Ordinance No 12/007 of 11 June 2012 related to the organization and functioning of the Government, and the practical modalities for collaboration between the President of the Republic and the Government, as well as amongst members of the Government;

Whereas Ordinance No 12/008 of 11 June 2012 setting the attributions of Ministries, especially articles 1, paragraph B2 thereof;

Based on the proposal by the Government as deliberated on in the Government meeting;

Taking into account the views of the High Defense Council

**NOW ORDAINS AS THUS**

**Article 1:**

This Ordinance defines the organization and functioning of the Republican Guard.

**Article 2:**

The Republican Guard is the unit from the Armed Forces which is detached to the President of the Republic and Supreme Commander of the Armed Forces of the Democratic Republic of Congo.

Republican Guard has the rank of a Division.

**Article 3:**

In addition to the standard missions entrusted to the Armed Forces of the Democratic Republic of Congo, the Republican Guard is tasked with the following specific missions:

- guarding and protecting the President of the Republic and the latter's family as guests of honor;
- providing security to presidential goods and installations;
- escorting and honors at the level of the Presidency of the Republic.

Aimé ZONVENI BE LOMBE
Official Translator-Interpreter of the Courts of Kinshasa under Decree N°0736/2007
English/French
bonevasje2@aol
+243 81 50 249 47
I, the undersigned AIME ZONVENI BE LOMBE, Official Translator-Interpreter of the Courts of Kinshasa, Democratic Republic of Congo for the English and French languages to hereto, certify and attest the foregoing to be the true and correct translation from the French into the English language to the best of my knowledge and belief.

Date   28 August 2017            Signature

**Article 4:**

Without prejudice to the provisions of article 3 of this Ordinance, the Republican Guard may be utilized, whenever necessary, for the defense of national territorial integrity and be called upon to participate in maintaining and re-establishing public order.

**CHAPTER II: ORGANIZATION AND FUNCTIONING**

**Section 1: Organization**

**Article 5:**

The Republican Guard is composed of:

- a Command;
- a staff;
- a headquarters unit;
- a fighting unit; and
- support units

**Article 6:**

The Republican Guard Command is composed of the following:

- one Commander with a special staff: one assistant, a Private Secretary, and an Aide-de-Camp; and
- two Deputy Commanders, one in charge of operations and intelligence and the other in charge of administration and logistics. They each have an assistant, a Private Secretary and an Aide-de-Camp.

**Article 7:**

The Republican Guard Staff is composed of the following:

- Human Resources Directorate (T1);
- Intelligence Directorate (T2);
- Operations Directorate (T3);
- Logistics Directorate (T4);
- Welfare Directorate (T5);
- IT Systems, Telecommunications and Signals Directorate (T6);
- Legal Affairs Directorate (T7);
- Engineering Directorate;
- Health Directorate; and
- Chaplaincy Directorate

**Article 8:**

The Headquarters Unit is composed of the following:

- An Administrative Unit;

Aimé ZONVENI BE LOMBE
Official Translator-Interpreter of the Courts of Kinshasa under Decree TP0736/2007
English /French.
azonveni@gb.cd
+243 81 99 049 47
I, the undersigned  AIE ZONVENI BE LOMBE  Official Translator-Interpreter of the Courts of Kinshasa, Democratic Republic of Congo  for the English and French languages do hereby certify and attest the foregoing to be the true  and correct translation from the French into this English language to the best of my knowledge and belief

Date    28 August 2017                          Signature

- A Logistics Unit; and
- A Services Unit

**Article 9:**

The fighting units are composed of the following:

- Security units;
- Special defense units; and
- Support units

**CHAPTER II: FUNCTIONING**

**Article 10:**

In terms of operations, the Republican Guard Commander reports to the President of the Republic.

In terms of administration and logistics, he Commander reports to the Chief of General Staff.

**Article 11:**

An officer with the rank of General is appointed as Commander of the Republican Guard.

The Commander is assisted by two deputies known as Deputy Commander of the Republican Guard having, each, the rank of Generals or High-ranking Officers.

In the event of absence or inability, the Commander of the Republican Guard shall be replaced higher ranking deputy.

**Article 12:**

The Republican Guard Commander and the latter's deputies are appointed, if necessary, are removed or dismissed from their positions by way of a Presidential Ordinance, as proposed by the Government and deliberated in the Cabinet Meeting in consultation with the Defense High Council.

**CHAPTER III: ATTRIBUTIONS FOR THE COMMANDER AND THOSE OF THE LATTER'S DEPUTIES**

**Article 13:**

The attributions of the Commander of the Republican Guard are as outlined below:

- See to the proper functioning of the unit under his/her command;
- Discharge the duties falling under his/her unity

**Article 14:**

Deputy Commanders assist the Commander of the Republican Guard in terms of coordination of activities falling under their respective jurisdictions.

Aimé ZONVENI BE LOMBE
Official Translator-Interpreter of the Courts of Kinshasa under Decree N°0736/2007
English/French
azonvenge@ci.cd
+243 81 99 549 47
I, the undersigned, AIMÉ ZONVENI BE LOMBE, Official Translator-Interpreter of the Courts of
Kinshasa, Democratic Republic of Congo for the English and French language do hereby certify
and attest the foregoing to be the true and correct translation from the French into the English
language to the best of my, own, knowledge and belief

Date   28 August 2017                    Signature

## CHAPTER IV: FINAL PROVISIONS

**Article 15:**

The organization and functioning of the units subordinated to the Republican Guard are defined by a decree from the Minister in charge of National Defense.

**Article 16:**

All previous provisions contrary to this Ordinance are hereby repealed.

**Article 17:**

The Minister in charge of National Defense and Former Combatants is hereby tasked with implementing this Ordinance which enters into force on the date of the signing thereof.

Done at Kinshasa on 17 June 2013

**JOSEPH KABILA KABANGE**

**Augustin MATATA PONYO MAPON**

**Prime Minister**

Certified true copy
On 17 June 2013
Cabinet of the President of the Republic
GUSTAVE BEYA SIKU
Cabinet Director
*(Signed)*

Aimé ZONVENI BE LOMBE
Official Translator-Interpreter of the Courts of Kinshasa under Decree 7F0736/2007
English/French
zonvene@gg.cd
+243 21 99 249 47
I, the undersigned  AIMÉ ZONVENI BE LOMBE  Official Translator-Interpreter  of  the Courts of
Kinshasa, Democratic Republic of Congo  for the English and French languages do hereby certify
and attest the foregoing to be the true  and correct translation from the French into the English
language to the best of my knowledge and belief

Date: 28 August 2017          Signature: [signature]

DRC-16433 0082



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

Case ID: DRC-11441

Erich C. Ferrari, Esq.
· Ferrari & Associates, P.C.
1455 Pennsylvania Avenue, NW
Suite 400
Washington, DC 20004

SEP 1 4 2018

Dear Mr. Ferrari:

This letter responds to your questionnaire response, dated April 10, 2018, and submitted to the Office of Foreign Assets Control (OFAC) of the U.S. Department of the Treasury on behalf of your client, Francois Olenga (Mr. Olenga) for reconsideration of your client's designation pursuant to Executive Order 13413 of October 31, 2006 "Blocking Property of Certain Persons Contributing to the Conflict in the Democratic Republic of the Congo," as amended by Executive Order 13671 of July 8, 2014 "Taking Additional Steps to Address the National Emergency With Respect to the Conflict in the Democratic Republic of the Congo."

In order to assist OFAC in properly evaluating your petition, we ask that you provide a detailed, narrative response to the following question. Please provide your response in a signed, original statement submitted with documentation in support of the answers given. Original statements and documents prepared in a language other than English should be accompanied by English translations.

1. In your April 10, 2018 response, you provided information on Mr. Olenga's role at the time as the Commander of the Military House (Maison Militaire) of the President of the Republic, supplementing your response with detail from related Democratic Republic of the Congo Ordinances.

   According to news reports, on July 14, 2018, Congolese state media announced a series of promotions and retirements within the Congolese National Armed Forces (FARDC). The announcements included that Mr. Olenga retired from the military as a four-star general and that he had taken a new position as Military Mission Manager of the Head of State, variably referred to as the Office of the President of the Republic.

   a. Please confirm Mr. Olenga's retirement from the military, providing any supporting documentation.

   b. Please name Mr. Olenga's official title and describe his current roles and responsibilities, including information on the missions of which he is in charge and whether the position is in the government or military. Additionally, please include whether Mr. Olenga has any authority over or responsibilities vis-à-vis any element of the DRC's security forces.

1

We may pose additional questions and documentary requests as we proceed. Please direct all communications regarding your case to OFAC at the address or e-mail listed below, referring to Case ID: DRC-11441. Please note that OFAC encourages the use of the e-mail address as it serves as the more expeditious method of communication.

> Office of Foreign Assets Control
> U.S. Department of the Treasury
> ATTN: Office of Global Targeting
> 1500 Pennsylvania Avenue, N.W. (Freedman's Bank Building)
> Washington, D.C. 20220
> Email: OFAC.Reconsideration@treasury.gov

Please respond to the questions above within 90 days. In the event that you choose not to respond to this request, please reply to OFAC advising that no response will be forthcoming. If you need an extension of time to respond to the questions listed in this letter, please notify OFAC, in writing, specifying how much additional time you will need. Failure to provide a response to this letter within 90 days of service may result in Treasury's denial and administrative closure of the matter, without prejudice to future requests.

Thank you for your cooperation in this matter.

> Sincerely,
>
> Nikole Thomas
> Assistant Director
> Counterterrorism, Human Rights, and
> Corruption Division
> Office of Foreign Assets Control

2



**Ferrari & Associates, P.C.**

1455 Pennsylvania Ave., NW
Suite 400
Washington, D.C. 20004
Tel. 202-280-6370
Fax. 877-448-4885

October 24, 2018

**SENT VIA EMAIL AND FEDERAL EXPRESS: # 8116 6203 3521**

ATTN: Nikole Thomas
Assistant Director
Counterterrorism, Human Rights, and Corruption Division
Office of Global Targeting
Office of Foreign Assets Control
United States Department of the Treasury
1500 Pennsylvania Avenue, NW (Freedman's Bank Building)
Washington, D.C. 20220

Re:   **Response to OFAC's September 14, 2018 Questionnaire**[1]
      *Francois Olenga—DRC-11441*

Dear Ms. Thomas:

On June 1, 2017, acting pursuant to Section 1(a)(ii)(E) of Executive Order ("E.O.") 13413, as amended by E.O. 13671, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") designated Francois Olenga ("Respondent") for purportedly being a leader of an entity that has, or whose members have, allegedly engaged in certain activities meeting the criteria for designation under E.O. 13413.[2] In its press release announcing Respondent's designation, OFAC alleged that Respondent was designated for "oversee[ing] the Republican Guard, an entity that has, or whose members have, engaged in actions or policies that undermine democratic processes or institutions in the [Democratic Republic of the Congo]."[3]

By means of a prior submission to OFAC, Respondent sought the administrative reconsideration of his designation pursuant to OFAC's delisting,[4] and assigned that

---

[1] Because this response contains business information and/or other information of a sensitive nature, undersigned counsel respectfully requests that OFAC treat this correspondence confidentially. If OFAC believes that it is required to release this document or any of the information contained herein to the public pursuant to the Freedom of Information Act ("FOIA") or any other federal law, please notify undersigned counsel as soon as possible. Undersigned counsel intends to provide additional information in support of this request for confidentiality.

[2] PRESS RELEASE, *Treasury Sanctions Senior Congolese Official for Leading Republican Guard in Undermining Democratic Processes*, U.S. Dep't of Treasury, June 1, 2017, *available at* https://www.treasury.gov/press-center/press-releases/Pages/sm0100.aspx.

[3] *Id.*

[4] 31 C.F.R. § 501.807.

reconsideration Case ID DRC-11441. On January 10, 2018, OFAC sent undersigned counsel a formal questionnaire seeking information and documents responsive to a series of questions relevant to OFAC's consideration of Respondent's reconsideration request. On April 10, 2018, Respondent filed initial responses to OFAC's questionnaire, which included a factual and legal analysis as to why Respondent's designation should be rescinded.

On September 14, 2018, OFAC issued a follow-up questionnaire seeking additional information and documents relevant to its consideration of Respondent's reconsideration request. Below are responses to these follow-up inquiries, as well as further legal analysis as to why Respondent's designation should be rescinded in light of such responses.

## I.      Response to September 14, 2014 Questionnaire

1.      According to news reports, on July 14, 2018, Congolese state media announced a series of promotions and retirements within the Congolese National Armed Forces (FARDC). The announcements included that Mr. Olenga retired from the military as a four-star general and that he had taken a new position as Military Mission Manager of the Head of State, variably referred to as the Office of the President of the Republic.

   a.      Please confirm Mr. Olenga's retirement from the military, providing any supporting documentation.

   **RESPONSE**: On July 14, 2018, by virtue of Ordinance No. 18/068, President Kabila ordered Respondent's retirement from the DRC's Armed Forces ("FARDC"). Respondent is attaching an original and translated copy of the relevant Ordinance to this submission, evidencing his retirement from the FARDC.[5]

   b.      Please name Mr. Olenga's official title and describe his current roles and responsibilities, including information on the missions of which he is in charge and whether the position is in the government or military. Additionally, please include whether Mr. Olenga has any authority over or responsibilities vis-à-vis any element of the DRC's security forces.

   **RESPONSE**: On July 14, 2018, following his retirement from FARDC, Respondent was appointed as Chargé de Mission, where he serves as a diplomatic liaison between President Kabila and former revolutionaries.

---

[5] Annex A—Ordinance No. 18/068 (July 14, 2018).

DRC-16433 0088

Respondent's position is civilian in nature, and Respondent operates under the supervision of the Office of the President's Chief of Staff Néhémie Mwilanya. Respondent's new position does not entail any responsibility or authority with respect to security forces, whether military or civilian.

Respondent's appointment was made pursuant to Ordinance No. 18/096. Respondent is attaching an original copy of Ordinance No. 18/096 to this submission for OFAC's review.[6]

## II.  Legal Analysis

### A.  Sufficiency of the Evidence

Despite requesting the administrative record underlying his designation on February 13, 2018, OFAC has yet to disclose such records. As far as Respondent can determine, OFAC appears to have based Respondent's designation on a determination that he exerts "operational control over the Republican Guard [as Commander of the Military House to the President of the Republic]," and that he "developed a plan to use the Republican Guard to disrupt opposition activities and financial support," including by "monitor[ing] and threaten[ing] opposition members and critics of President Kabila."[7] The Republican Guard appears to be an entity that OFAC alleges to have, or whose members have, engaged in actions or policies that undermine democratic processes or institutions in the Democratic Republic of the Congo.

In his April 10, 2018 Questionnaire Response, Respondent argued that he does not exercise any "operational control over the Republican Guard" in his capacity as Commander of the Military House of the President of the Republic, as that role does not include any authority over, or responsibilities vis-à-vis, the Republican Guard. Specifically, Respondent noted that his position is not within the chain of command between the Republican Guard and the President of the Republic. In support of that argument, Respondent provided copies of DRC ordinances outlining the specific roles and responsibilities of the Maison Militaire and the Commander of the Military House.

Since Respondent's April 10, 2018 Questionnaire response, additional events have taken place that further warrant the immediate rescission of Respondent's designation. Specifically, as OFAC has noted, Respondent has been removed from his position as Commander of the Military House of the President of the Republic and thus no longer holds the obligations and responsibilities of that office. On July 14, 2018, by virtue of Ordinance No. 18/068, President Kabila ordered Respondent's retirement from the FARDC, including any positions held therein.

---

[6] Annex B—Ordinance No. 18/096 (July 14, 2018).
[7] Id.

DRC-16433 0089

At the same time, Respondent was appointed Chargé de Mission to act as a diplomatic liaison between President Kabila and former DRC revolutionaries.  In this new position, which is civilian in nature, Respondent has no authority over security forces in the DRC, be they military or civilian.

As a result of this change in position, the factual predicate for Respondent's designation has been negated, as Respondent does not exert "operational control over the Republican Guard."  As such, no argument can be made that he exerts any control over the Republican Guard due to his retirement from the FARDC and his appointment as Chargé de Mission. Accordingly, there has been a fundamental change in circumstances nullifying the basis for designation and warranting rescission of Respondent's designation.

Indeed, to the extent that Respondent's OFAC designation was "status-based" due to his alleged control over the Republican Guard, Respondent is no longer Commander of the Military House and can thus no longer be alleged to exert operational control over the Republican Guard. Assuming *arguendo* that Respondent's designation was "conduct-based" for his alleged role in actions carried out by DRC security forces, Respondent's retirement from the FARDC and his appointment to a diplomatic position in the DRC Government evidences that he can no longer be alleged to exert operational control over any DRC security forces, including, but not limited to, the Republican Guard.

## B.    Policy Considerations

According to OFAC, "[t]he power and integrity of [its] sanctions derive not only from its ability to designate and add persons to the Specially Designated Nationals and Blocked Persons List, but also from its willingness to remove persons from the SDN List consistent with the law."[8]  As a result, OFAC has stated that "[t]he ultimate goal of sanctions is not to punish, but to bring about a positive change in behavior."[9]  Evidencing its commitment to use sanctions to provoke behavioral changes in the sanctions target, OFAC has noted that it "removes hundreds of individuals and entities from the SDN List."[10]  Typically, OFAC's removal of individuals and entities from its SDN List follows a petition for reconsideration from the sanctioned parties, wherein the sanctioned parties provide evidence showing that the factual basis for OFAC's designation was erroneous and/or that there has been a fundamental change in circumstances that nullifies the basis for designation and warrants rescission of the designation altogether.

---

[8] Filing a Petition for Removal from an OFAC List, U.S. Dep't of Treasury, May 2, 2017, *available at* https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/petitions.aspx.
[9] *Id.*
[10] *Id.*

DRC-16433 0090

Respondent respectfully contends that there has been a fundamental change in circumstances warranting rescission of his designation—i.e., he is no longer the Commander of the Military House and cannot thus be alleged any longer to exert operational control over the Republican Guard.   Thus, even if OFAC's allegations regarding Respondent were true, his retirement and appointment to a diplomatic position in the DRC Government constitutes a fundamental change in circumstances, nullifies the basis for designation, and warrants the immediate rescission of his OFAC designation.

Given the change in circumstances arising from Respondent's retirement, OFAC should rescind Respondent's designation.   To do otherwise would transform U.S. sanctions into a punitive measure as opposed to a tool to change a targeted party's behavior.   In other words, maintaining Respondent's designation in light of the clear change in circumstances negating the basis of his designation would run contrary to the policy objectives underlying OFAC's sanctions programs.   Further, such an action would not be supported by the law nor the agency's published policies concerning delisting of sanctioned parties.

## IV.   Conclusion

Respondent respectfully requests that OFAC rescind Respondent's designation under E.O. 13413, as amended, as soon as possible.   As discussed above, Respondent was originally designated for allegedly exerting operational control over the Republican Guard, however, Respondent has since left his prior position as Commander of the Military House and has retired from the FARDC.   As such, Respondent can no longer be fairly alleged to exert any authority over the Republican Guard nor any other DRC security forces, and thus the basis of his designation is negated.

Please forward all correspondence relating to this matter to:

Erich C. Ferrari
Ferrari & Associates, P.C.
1455 Pennsylvania Avenue, N.W.
Suite 400
Washington, D.C. 20004

Thank you for your consideration and we look forward to your response.

Sincerely,

Erich C. Ferrari

# ANNEX

# A

DRC-16433 0092

1

## Ordinance No. 18/068 of 14 July 2018 establishing the retirement of General officers of the Armed Forces of the DRC

The President of the Republic

Considering the Constitution, as modified by the law n ° 11/002 of January 20th revising some articles of the constitution of the DRC of February 18th, 2006, especially in its articles 79 and 81;

Having regard to Organic Law No. 11/012 of 11 August 2011 on the organization and functioning of the armed forces, especially Article 9;

Having regard to the Organic Law No on the organization, composition, powers and functioning of the Higher Council of the Defense, especially in Article 3

Thereof, having regard to Law No 13/005 of 15 January, 2013 on the status of a member of the armed forces of the DRC, especially in his articles 1, 2,3, 15, 57, 171, 184, 189, 195, 196, 203 and 215;

Having regard to the order n°10/047 of 23 June 2010 instituting the wearing of distinctive ranks and insignia within the Armed forces of the DRC, especially in its articles 1,2 and 3;

Given the urgency;

On the proposal of the Government;

The superior council of defense heard

Ordered:

Article 1

Are retired the army generals or grand admirals of the Armed Forces of the DRC whose names, post-surnames, first names and regimental numbers follow:

| N° | Names, post-surnames, first names | Regimental numbers |
|----|-----------------------------------|--------------------|
| 1. | ETUMBA LONGILA DIDIER | 155791485384 |
| 2. | KALUME NUMBI DENIS | 146632242196 |

2

| | | |
|---|---|---|
| 3. | KPAMA BARAMOTO KATA PHILEMON | 147648374588 |
| 4. | LUKAMA MUSIKAMI MARCELIN | 147631458802 |
| 5. | MASSAMBA MUSSUNGU RIGOBERT | 147683968437 |
| 6. | OLENGA TETE FRANCIS | 148640606382 |

Article 2

Are repealed all previous provisions and contrary to this order

Article 3

The Prime minister and the minister of national defense, veterans and reintegration are responsible, each for his own part, for the execution of this ordinance, which comes into force on the date of its signature.

Made at Kinshasa on July 14, 2018

Joseph Kabila Kabange

Bruno Tshibala Nzenze

Prime Minister

For certified copy to the original the Cabinet of the president of the Republic

Néhémie MWILANYA WILONDJA

Chief of Staff



*République Démocratique du Congo*

CABINET DU PRÉSIDENT DE LA RÉPUBLIQUE

Kinshasa, le

## ORDONNANCE N° 18/068 DU 14 JUILLET 2018 PORTANT MISE A LA RETRAITE D'OFFICIERS GENERAUX DES FORCES ARMEES DE LA REPUBLIQUE DEMOCRATIQUE DU CONGO

### Le Président de la République ;

Vu la Constitution, telle que modifiée par la loi n° 11/002 du 20 janvier 2011 portant révision de certains articles de la Constitution de la République Démocratique du Congo du 18 février 2006, spécialement en ses articles 79 et 81 ;

Vu la loi organique n° 11/012 du 11 août 2011 portant organisation et fonctionnement des Forces Armées, spécialement en son article 9 ;

Vu la loi organique n° 12/001 du 27 juin 2012 portant organisation, composition, attributions et fonctionnement du Conseil Supérieur de la Défense, spécialement en son article 3 ;

Vu la loi n° 13/005 du 15 janvier 2013 portant Statut du militaire des Forces Armées de la République Démocratique du Congo, spécialement en ses articles 1, 2, 3, 15, 57, 171, 184, 189, 195, 196, 203, et 215 ;

Vu l'Ordonnance n° 10/047 du 23 juin 2010 instituant le port des grades et insignes distinctifs au sein des Forces Armées de la République Démocratique du Congo, spécialement en ses articles 1, 2 et 3 ;

Vu l'urgence ;

2

*Suite*

Sur proposition du Gouvernement ;

Le Conseil Supérieur de la Défense entendu ;

## O R D O N N E :

### Article 1er :

Sont mis à la retraite les Généraux d'Armée ou Grand Amiraux des Forces Armées de la République Démocratique du Congo dont les noms, post–noms, prénoms et matricules suivent :

| N° SERIE | NOM & POSTNOMS | Matricule |
|----------|----------------|-----------|
| 1 | ETUMBA LONGILA DIDIER | 155791485384 |
| 2 | KALUME NUMBI DENIS | 146632242196 |
| 3 | KPAMA BARAMOTO KATA PHILEMON | 147648374588 |
| 4 | LUKAMA MUSIKAMI MARCELIN | 147631458802 |
| 5 | MASSAMBA MUSSUNGU RIGOBERT | 147683968437 |
| 6 | OLENGA TETE FRANCOIS | 148640606382 |

### Article 2 :

Sont abrogées toutes les dispositions antérieures et contraires à la présente ordonnance.

Palais de la Nation avenue Roi Baudouin  Kinshasa / Gombe

3

*Suite ......*

**Article 3** :

Le Premier Ministre et le Ministre de la Défense Nationale, Anciens Combattants et Réinsertion sont chargés, chacun en ce qui le concerne, de l'exécution de la présente ordonnance, qui entre en vigueur à la date de sa signature.

Fait à Kinshasa, le 14 juillet 2018

**Joseph KABILA KABANGE**

**Bruno TSHIBALA NZENZHE**
Premier Ministre

Pour copie certifiée conforme à l'original
Le 14 juillet 2018

Le Cabinet du Président de la République
Néhémie MWILANYA WILONDJA
Directeur de Cabinet

# ANNEX

# B

DRC-16433 0098



## ORDONNANCE N° 18/096 DU 14 JUILLET 2018 PORTANT NOMINATION D'UN CHARGE DE MISSION DU CHEF DE L'ETAT

**Le Président de la République ;**

Vu la Constitution, telle que modifiée par la loi n° 11/002 du 20 janvier 2011 portant révision de certains articles de la Constitution de la République Démocratique du Congo du 18 février 2006, spécialement en ses articles 69 et 79 ;

Vu, telle que modifiée et complétée à ce jour, l'Ordonnance n°09/003 du 30 janvier 2009 portant organisation et fonctionnement du Cabinet du Président de la République, spécialement en ses articles 3 et 11 ;

Vu l'urgence et la nécessité ;

**O R D O N N E :**

**Article 1er :**

Est nommé Chargé de Mission du Chef de l'Etat, **Monsieur OLENGA TETE François.**

2
*Suite*

## Article 2 :

Sont abrogées, toutes les dispositions antérieures contraires à la présente Ordonnance.

## Article 3 :

Le Directeur de Cabinet du Président de la République est chargé de l'exécution de la présente Ordonnance qui entre en vigueur à la date de sa signature.

Fait à Kinshasa, le 14 juillet 2018

**Joseph KABILA KABANGE**

Pour copie certifiée conforme à l'original

Le 14 juillet 2018

Le Cabinet du Président de la République

Néhémie MWILANYA WILONDJA

Directeur de Cabinet

DRC-16433 0100



CABINET DU PRESIDENT DE LA REPUBLIQUE

Le Directeur de Cabinet :                                    Kinshasa, le

N. Ref

# ORDER N ° 18/096 OF 14 JULY 2018 APPOINTING A MISSION CHARGE
## FROM THE HEAD OF THE STATE

the president of the Republic ;

Considering the Constitution, as modified by the law n ° 11/002 of January 20th, 2011 for revision of certain articles of the Constitution of the Democratic Republic of Congo of February 18th, 2006, especially in its articles 69 and 79;

Seen, as amended and completed to date, Ordinance No. 09/003 of January 30, 2009, on the organization and functioning of the Office of the President of the Republic, especially in Articles 3 and 11;

Given the urgency and the necessity;

## O R D O N N E:

Article 1:

Is appointed Head of Mission of the Head of State, Mr. OLENGA TETE François.

Paiab de lrr Na.t i aJe! 1 1 e Ro! .B u or1 1:.

. cl

2

## Article 2 :

Are repealed all previous provisions contrary to this Order.

Article 3:

The Chief of Staff of the President of the Republic is responsible for the execution of this Ordinance, which comes into force on the date of signature.

Done at Kinshasa, on July 14, 2018

**Joseph KABILA KABANGE**

For certified true copy on 14 July, 018

the Republic

Le Cabinet du Président de ILON DJA

Néhémie MWILANYA W

Directeur de Cabinet

DRC-16433 0102

# Fardc: Joseph Kabila names Lieutenant-General Celestin Mbala Munsense General Staff



16-07-2018          - Joseph Kabila also appointed, in this series of orders, General John Numbi Inspector General of the FARDC, formerly head of the Congolese National Police.

The Head of State, Joseph Kabila Kabange, has just signed a series of orders concerning organization within the Congolese National Army Forces (FARDC). The information was made public by the official media.

Lieutenant-General Célestin Mbala Munsense has been named Chief of the General Staff of the Army Forces of the Democratic Republic of the Congo (FARDC), replacing Lieutenant-General Didier Etumba Longila, following a Presidential Order signed on 14 July 2018 made public the same day.

Lieutenant-General Amisi Kumba Gabriel and Major-General Bongwangela Jean-Pierre were respectively appointed Deputy Chiefs of Staff in charge of operations and intelligence, administration and logistics. The General Majors Kashale Daniel, Kahimbi Kasabwe Delphin, Yav Jean-Luc and Brigadier General Kilumba Kalala, have been appointed Deputy Chiefs of Staff within the FARDC in charge of operations, intelligence, logistics and administration.General John Numbi named Inspector General of the FARDC

DRC-16433 0104

Within the FARDC General Inspectorate, the President of the Republic, Supreme Commander of the Army Forces of the Democratic Republic of the Congo (FARDC) and the Congolese National Police (PNC), has appointed General John Numbi BanzaTambo Inspector General of the FARDC, Major Generals Mosuzo Pacific, Kasereka Sindani Etienne ... respectively Deputy Inspectors General for Operations and Intelligence, Administration and Logistics.

While Brigadier General Kabwanga Kasewu Symphorose, Lieutenant General Munkutu Kiyama Tim and Major General Mutombo Katalay Joseph were named respectively Secretary General of Veterans Affairs, Auditor General of the FARDC and First President of the High Military Court.Admiral Kabulo Mwanza nvitaKamat and Brigadier General Jean-Pierre Kasongo Kabwik were respectively appointed Chancellor of the Kabila-Lumumba National Orders and National Service Commander (SN). Brigadier General Kabambawa Kabamba Francois was appointed Deputy Chief of Staff of the Head of State in charge of Administration and Logistics.

Retirement of some FARDC general officersHead of State Joseph Kabila Kabange has, according to other orders made public on Saturday, retired some FARDC general and admiral officers, including Lieutenants-General François Olenga, Kpama Baramoto Kata, Etumba Longila Didier, Dénis Kalume Numbi and Massamba Musumbu Rigobert. Moreover, MM. Didier Etumba and Francois Olenga were appointed respectively military advisor and military officer of the Head of State. Several other orders were also signed on the same date by the Head of State, appointing senior officers, Secretaries General for Defense, commanders of military schools and several other functions within the judiciary of the Army Forces of the DRC.

The Head of State nominated posthumously Brigadier General Abiti Manulayi Albert, Ntita Tshibambe Alphonse and Nzumande Yakabo Adrien. At the rank of colonel or captain, President Joseph Kabila Kabange posthumously appointed lieutenant colonels and captains of frigates Mbayi Kabuinda Joseph, Mandi Makuale Jean and Kapema Matule Olivier.General Officers appointed to the rank of Major General or Vice Admiral and Brigadier General or Admiral of the FARDCAccording to other orders, the President of the Republic has appointed to the rank of Major General or Vice Admiral of the Army Forces of the Democratic Republic of Congo the general officers whose names, post names and first names follow:

- Aguru Muamba Maurice,
- Amisi Okito Edmond,
- Asumani Isa Kumba Marcelin,
- Bombole Loola Camille,
- Bongwatela Jean-Pierre,
- Diasuka Dia Kiyama Maurice Grel,
- Ekuba Mombo Marcel,
- Ekutsu Wanzanga Michel,
- EjilaYav Jean-Luc,
- Ilunga Kapeta Placide,
- Ilunga Gaston-Luc,
- Kabanda Kuhonga Gilbert,
- Kabeya NkongoloFernand,
- Kayimbi Kasagwe Delphin,
- Kakudji Ilunga Louis,
- Kashale Mugaya Daniel,
- Kasonga Cibangu Léon-Richard,
- Kawumbu Yankole Isidore,
- Kitenge Tundwa,
- Kuyandi Hemedy Lukombo Albert,
- Linguma Mata Linguma Jean-Marie Valentin,
- Luboya Nkashama Johny,
- Luyambi Madilu Robert Stanislas,
- Mobondani Michel Chora,

- Matutezulwa Kamasugwa André,
- Mbangu Mashita Marcel,
- Mastafa Mukiza Gaby,
- Muhindo Awindos Charles,
- Mushita Antoine David,
- Mutombo Katalayi Tembe Joseph,
- Nduwa Jingambo Jean de Dieu,
- Ngangwele Mokali Jean-Paul,
- Nganguka Mbame Urbain,
- Numbi Ngoy Enoch,
- Padiri Luize Jonas,
- Sasa Matsuele Micheline,
- Sikabwe AsindaVall,
- Yanguya Baruti Dieudonné,
- Yav Kabeya Jean Claude,
- Yav Irung Philémon.

Are appointed to the rank of Brigadier General or Rear Admiral of the FARDC officers whose names, post-names and first names follow:

- Adruma Suka Ndombo Erickson,
- Atili Muzinga Léon,
- Asani Lendula Moze Michel,
- Atibu Munganga Alos Félicien,
- Baleke Budala Déo,
- Balengele Kazadi Benjamin William,
- Baseleba bin Mateto Jean,
- Birori Mota Abazi Benjamin, etc...

DRC-16433 0106

## Releasable Information from Exhibit 19

<u>Page 2:</u>

Democratic Republic of the Congo: General Francois Olenga
July 13, 2016

<u>Page 3:</u>

General Francois Olenga is a highly influential military commander in the Democratic Republic of the Congo (DRC) and one of President Joseph Kabila's closest advisors.  He was in President Laurent Kabila's inner circle as the main weapons supplier for the AFDL that brought Kabila to power in 1997.  He became Army Commander of the Congolese Army in 2001 and is now the head of the "Military House of the President."  In his current position he controls the elite units and special battalions in the Congolese army, including the powerful yet brutal Republican Guard.[1]

Olenga also owns the resort "Safari Club" in Nsele, Kinshasa.

He is a native of Maniema and outside his military career, and is reported as being a businessman.

Aliases/other names: Francois Okunji, Francois Otshundi

---

[1] Pierre Boisselet and Treasury Kibangula, "RD Congo: atouts, faiblesses, reseaux... tout savoir sur la machine Kabila", Jeune Afrique, January 27, 2016, available at http://www.jeuneafrique.com/mag/294357/politique/rd-congo-atouts-faiblesses-reseaux-savoir-machine-kabila/

DRC-16433 0134A

DR Congo: Crackdown on Presidential Aspirant



**MAY 9, 2016**

# DR Congo: Crackdown on Presidential Aspirant

Arrests of Backers, Politically Motivated Probe

(Kinshasa) – Authorities in the Democratic Republic of Congo have arrested at least 27 associates of Moise Katumbi, a presidential aspirant, and other opposition party members since late April 2016. Congo's justice minister announced an investigation into Katumbi on May 4, the day he announced his candidacy.

The arrests occurred between April 22 and May 7 in and around the southern city of Lubumbashi, where Katumbi is based. The investigation into Katumbi for his alleged "recruitment of mercenaries, [including] several retired American soldiers," appears politically motivated, Human Rights Watch said. On May 7 the prosecutor's office in Lubumbashi summoned Katumbi to appear on May 9.

"The arrests and attacks in Lubumbashi appear to be more than just the usual police harassment, but targeted actions against a presidential aspirant and close supporters," said Daniel Bekele, Africa director at Human Rights Watch. "The government should urgently reverse course and ensure that opposition parties and all Congolese are freely able to

DRC-16433 0234

6/3/2016                                    DR Congo: Crackdown on Presidential Aspirant

express their views and peacefully
assemble."

On April 24, police fired teargas at
Katumbi and a large crowd of peaceful

Moise Katumbi, opposition leader and former governor of Katanga
province, attending a funeral mass in honor of legendary Congolese
singer Papa Wemba in Lubumbashi, Democratic Republic of Congo, May
4, 2016.

© 2016 Kenny Katombe / REUTERS

demonstrators in Lubumbashi to block an opposition rally at which Katumbi was to speak. Two opposition
party headquarters in Lubumbashi were recently vandalized.

Congo's communications minister Lambert Mende told Radio France Internationale (RFI) on April 25 that
"the police used teargas to disperse people who wanted to block traffic [on the roads in Lubumbashi]. There
were some administrative arrests," he added. "But without significant consequences, in my opinion."

The recent developments in Lubumbashi
come in the context of a broader
crackdown against activists, opposition
party members and others who have urged
that presidential elections be organized
according to the constitutional timetable,
Human Rights Watch said.

Political parties organized public meetings
in cities across Congo on April 24 to
commemorate the country's multiparty
democratization process, which began 26
years ago. The opposition also sought to
use the meetings to protest attempts to
extend President Joseph Kabila's stay in
power beyond his constitutionally
mandated two-term limit, which ends on
December 19. The meetings in Kinshasa,
the capital, and the eastern cities of Goma
and Bukavu proceeded peacefully.

Demonstrators run, after police started firing teargas to block a peaceful
political opposition meeting from taking place on April 24, 2016, in the
southern city of Lubumbashi, Democratic Republic of Congo.
Presidential aspirant Moise Katumbi was due to speak at the meeting.
© 2016 Private

A similar meeting in Lubumbashi had
been organized by the G7, a platform of seven political parties dismissed from President Kabila's majority
coalition in September 2015 after publicly calling on the president to organize presidential elections on time

and support a successor. On March 30, the G7 announced their support for Katumbi as a presidential candidate. The former governor of Katanga province, Katumbi defected from Kabila's political party in September to join the opposition.

Early in the morning on April 24, police deployed heavily throughout Lubumbashi's neighborhood known as the Kenya commune, where the political meeting was to take place. Police searched all vehicles and passengers entering the neighborhood and blocked a number of streets.

After learning he would not be able to enter the neighborhood by vehicle, Katumbi entered on foot, avoiding the police barriers. A crowd of supporters accompanied him as he walked the several kilometers toward the Kenya stadium, the planned meeting site. As they neared the stadium, police began firing teargas toward Katumbi and the crowd around him, preventing the meeting from taking place.

Police and Republican Guard soldiers also blocked a team of human rights observers and security officers from the United Nations peacekeeping mission in Congo, MONUSCO, from entering the Kenya commune that morning. They were only able to enter toward the end of the day, by going around the police barriers.

In Lubumbashi during the days leading up to and following the scheduled public meeting, security forces arrested Katumbi's former cabinet director; 6 of Katumbi's employees; 2 sons of a G7 opposition leader, Pierre Lumbi, and 3 of their business employees; at least 10 opposition party members and others who had come out to participate in the scheduled public meeting; one of Katumbi's former security guards; and 4 human rights activists who were observing as security forces searched Katumbi's farm without a warrant. Sixteen of these have since been released, while 11 remain in detention. Human Rights Watch has received reports of additional arrests of those close to Katumbi that it is seeking to confirm.

Police fired teargas to block a peaceful political opposition meeting from taking place on April 24, 2016, in the southern city of Lubumbashi, Democratic Republic of Congo. Presidential aspirant Moise Katumbi was due to speak at the meeting.

© 2016 Private

Opposition party headquarters in Lubumbashi were attacked before and since the planned meeting. Police vandalized the headquarters of the National Union of Federalists of Congo (Union Nationale des fédéralistes du Congo, UNAFEC), one of the G7 members, in Lubumbashi on April 19 and 20 and have

kept it shut under police guard. On April 26, unidentified assailants set fire to the Lubumbashi headquarters of another G7 party member, National Union of Federalist Democrats (Union Nationale des Démocrates Féderalistes, UNADEF).

After the justice minister's announcement of the investigation into Katumbi on May 4, there were reports that Katumbi might be arrested or taken in for questioning. Three Congolese human rights activists went to Katumbi's house on the morning of May 5 to monitor the situation from outside. They told Human Rights Watch that about a dozen vehicles with suspected National Intelligence Agency (Agence nationale de renseignements, ANR) and other security force officials, most in civilian clothes, were deployed along the avenue in front of Katumbi's home. At about 3 p.m., an ANR official told the activists, "We know you very well, you work against the nation and you're spying on our agents." He then added, "We're on an official mission, and we order you to leave the 'sector' immediately and not to come back." The activists then left the area.

These recent incidents highlight the importance of MONUSCO increasing its military and police presence in Lubumbashi, a political hotspot where there is currently a minimal UN presence. MONUSCO should fully implement its mandate to protect all those at risk from political violence and threats in the area, Human Rights Watch said.

Over the past year and a half, government officials and security forces have arrested dozens of opposition leaders and activists, fired on peaceful protesters, banned demonstrations organized by the opposition, shut down media outlets close to the opposition, intimidated and threatened those who have considered joining the opposition, and prevented opposition leaders from moving freely around the country. In numerous recent cases, the justice system and other state institutions – including the ANR, police, and Republican Guard – have acted in a partisan manner on behalf of the government, Human Rights Watch said.

Preparations for presidential elections have stalled, and many senior government officials and members of Kabila's ruling coalition have said that elections cannot be held before the end of the year. They have called for a national dialogue to discuss the way forward. Many of the main opposition parties have refused to participate in the dialogue, citing fears it is merely a ploy for Kabila to stay in power.

"Arresting those close to opposition leaders, vandalizing their party offices, and using teargas to disrupt peaceful demonstrations sends a frightening message about future election security," Bekele said. "Government officials should get serious about their calls for dialogue by creating a climate of confidence and ending the campaign of harassment and violence."

**For more information on the recent arrests and other political repression in Lubumbashi, please see below.**

DRC-16433 0237

**Authorization for public meeting in Lubumbashi**

Ten days before the planned public meeting on April 24, UNAFEC wrote to Lubumbashi's mayor on behalf of the G7 to inform him of the demonstration. Human Rights Watch has on file a copy of the letter, with acknowledgement of receipt from the mayor's office. Congo's constitution and electoral law require the organizers of political demonstrations to inform local administrative authorities in writing 24 hours in advance of a planned demonstration, but they are not required to receive prior authorization.

**Arrests in Lubumbashi**

On April 22 at about 8:30 p.m., police without a warrant searched the Lubumbashi home of Professor Huit Mulongo, who had served as cabinet director for Katumbi during his governorship. Mulongo has been a leader of the Front Citoyen 2016, a coalition of parties and groups urging President Kabila to accept existing constitutional term limits.

The police arrested Mulongo after finding a revolver in his jeep and leaflets about the G7 and the Front Citoyen in his house. They took him to the National Intelligence Agency (Agence Nationale des Renseignements, ANR), where he spent a night before being transferred to a military tribunal. Judicial officials questioned Mulongo about his political activities and his revolver, which he said was appropriately registered. Mulongo was later transferred to Kassapa, Lubumbashi's central prison, where he remains in detention. His lawyer told Human Rights Watch that Mulongo has not been officially charged with any crime and there has been no response to a request for provisional release.

Early on the morning of April 24, before the scheduled opposition meeting in Lubumbashi, ANR agents, without a warrant, searched the Rift Congo Hotel, owned by the family of Pierre Lumbi, a G7 leader and president of the Social Movement for Revival (Mouvement social pour le renouveau, MSR) political party. The agents targeted four hotel rooms, finding five weapons in one of them.

Hotel employees said that the ANR agents were joined by police and military intelligence officers. They seized the video recordings from the hotel's surveillance cameras and arrested Lumbi's two sons, Larry, 29, and Djela, 32, who manage the hotel as well as a receptionist, a security guard, and the technician who operates the surveillance cameras. All were taken to an ANR detention center.

Lumbi's younger son and the technician were released without charge at about 9 p.m. The others were released without charge at about 8 p.m. the next evening.

The Rift Congo Hotel management has not been shown the seized surveillance video, which should provide images of the person who checked into the hotel room where the weapons were found as well as the license plate number of the vehicle the person arrived in.

At about 5 p.m. on April 24, police and ANR agents arrested six of Katumbi's employees who were waiting for him in two vehicles on Bukama Avenue outside the Kenya stadium, including two drivers, three security guards and a United States citizen who works as a security adviser for Katumbi. One of the drivers said police officers beat him before taking him and the others to an ANR detention center. At about 2 a.m., ANR personnel took one of the detained security guards from his cell and whipped him dozens of times. Witnesses said that he returned to the cell with marks on his back and an injured right arm.

The two drivers were released the next day, while the others were transferred to the ANR in Kinshasa, where they are still being held. Katumbi told Human Rights Watch that he and his family had received multiple threats and that he had hired American security advisers after the government took away the security guards he had had while serving as governor.

Of the 10 opposition party members and others also arrested on April 24 after coming out to participate in the scheduled public meeting in Lubumbashi's Kenya commune, 5 were later released and 5 remain in detention, according to UN human rights observers. One of those arrested was a journalist for a pro-UNAFEC radio and television station, VKAT, which was shut down on March 11. He told Human Rights Watch that he had been accused of "sharing images" and was released the next day without charge after paying a sum of money.

On May 5, the authorities arrested one of Katumbi's former security guards. He was first held at a military tribunal before being transferred to the ANR in Lubumbashi, where he remains in detention.

On May 7, security forces deployed to Katumbi's Futuka farm, about 70 kilometers outside of Lubumbashi, and searched the premises without a warrant, according to Katumbi and people at the farm. Four Congolese human rights activists who were monitoring the situation were detained at around noon. They were held by the ANR at the farm until about 6 p.m. when three of them were released. The fourth, Hubert Tshiswaka, was then taken to an ANR detention center in Lubumbashi, where he was held until about 10:30 p.m. His phone was confiscated.

**Attacks on Opposition Party Headquarters**

On April 19, police in Lubumbashi tore down the G7 party flags and five large photos of Katumbi that had been posted on the gate outside the UNAFEC party headquarters soon after the UNAFEC leader, Gabriel Kyungu, announced the upcoming public meeting with Katumbi, their presidential candidate. UNAFEC members and other neighborhood youth soon gathered to protest. The police fired teargas into the crowd. Some of the youth threw rocks at the police and burned tires in the streets. Later that evening, the police returned to the UNAFEC party headquarters to take down a large photo of Kyungu.

The next morning, large numbers of police were deployed to the Kenya commune and the clashes with the

youth protesters continued. Witnesses said that the police fired teargas and each side threw rocks at the other. Many shops and businesses were closed.

At about 4 p.m., prosecutor's office officials arrived and sealed the UNAFEC headquarters shut. It remains closed, with police outside to prevent party members from entering.

The police arrested 11 men and a teenage boy during the protests outside the UNAFEC headquarters on April 19 and 20. The teenager was transferred to the children's tribunal and later released. The others were hastily tried on the night of April 21 without being given time to prepare a defense. Nine were convicted of rebellion, voluntary destruction of goods or property, and robbery and sentenced to 2, 5, or 10 years in prison. Two others were acquitted. The defendants' lawyer and a UNAFEC official said the nine who were convicted were in the area during the incidents but were not UNAFEC members. They are in Kassapa central prison.

Kyungu was not arrested, but a court in Lubumbashi found him guilty on April 22 of ordering the robbery of a store and ordered him to pay a fine of 10 million Congolese francs (about US$10,800) to the owner. The court also ordered the destruction of the seized photos of Katumbi.

No police officers were arrested for the vandalism at the UNAFEC party headquarters or other abuses.

On April 26, soon after midnight, unidentified assailants set fire to the headquarters of another G7 party in Lubumbashi, UNADEF. Furniture, rugs, and curtains were destroyed and the walls and ceilings were partially burned before neighbors were able to put the fire out. The day before, UNADEF had submitted a letter to the mayor's office, informing him of a political meeting scheduled for May 2. UNADEF announced on May 1 that the meeting would be delayed, in respect for the national funeral service for Congo's international music icon Papa Wemba, scheduled that day in Kinshasa.

## Region / Country

- Africa
- Democratic Republic of Congo

**Source URL:** https://www.hrw.org/news/2016/05/09/dr-congo-crackdown-presidential-aspirant

**Links**

[1] https://www.hrw.org/africa/democratic-republic-congo

[2] https://www.hrw.org/view-mode/modal/289663

[3] https://www.hrw.org/about/people/daniel-bekele

[4] https://www.hrw.org/view-mode/modal/289661

DRC-16433 0240

[5] https://www.hrw.org/news/2016/03/15/dr-congo-free-youth-activists

[6] https://www.hrw.org/view-mode/modal/289662

DRC-16433 0241

**Help us continue to fight human rights abuses. Please give now to support our work** »



# About

Human Rights Watch is a nonprofit, nongovernmental human rights organization made up of roughly 400 staff members around the globe. Its staff consists of human rights professionals including country experts, lawyers, journalists, and academics of diverse backgrounds and nationalities. Established in 1978, Human Rights Watch is known for its accurate fact-finding, impartial reporting, effective use of media, and targeted advocacy, often in partnership with local human rights groups. Each year, Human Rights Watch publishes more than 100 reports and briefings on human rights conditions in some 90 countries, generating extensive coverage in local and international media. With the leverage this brings, Human Rights Watch meets with governments, the United Nations, regional groups like the African Union and the European Union, financial institutions, and corporations to press for changes in policy and practice that promote human rights and justice around the world.

Watch a video about Human Rights Watch and how we work:



**Ferrari & Associates, P.C.**

1455 Pennsylvania Ave., NW
Suite 400
Washington, D.C. 20004
Tel. 202-280-6370
Fax. 877-448-4885

February 13, 2019

<u>**SENT VIA EMAIL AND FEDERAL EXPRESS: # 8132 1871 7519**</u>

ATTN: Nikole Thomas
Assistant Director
Counterterrorism, Human Rights, and Corruption Division
Office of Global Targeting
Office of Foreign Assets Control
United States Department of the Treasury
1500 Pennsylvania Avenue, NW (Freedman's Bank Building)
Washington, D.C. 20220

Re:    <u>**Letter Requesting Francois Olenga's Immediate Delisting from OFAC's SDN List**</u>
       *Francois Olenga—DRC-11441*

Dear Ms. Thomas:

On October 24, 2018, Francois Olenga (herein referred to as "Olenga") responded to a supplemental questionnaire issued by the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") seeking information and documents relevant to OFAC's reconsideration of Olenga's designation under Executive Order ("E.O.") 13413, as amended. In that response, Olenga confirmed his retirement from the DRC's Armed Forces ("FARDC") and provided documentation in support of that confirmation. In addition, Olenga noted that he was appointed to a civilian position in which he would serve as a diplomatic liaison between President Kabila and former revolutionaries. As a result, Olenga could no longer be alleged to exert "operational control over the Republican Guard"—which was the stated basis for his designation pursuant to E.O. 13413, as amended. Thus, his designation should be rescinded.

Olenga now respectfully requests that OFAC immediately rescind his designation pursuant to E.O. 13413, as amended, and remove his name from the List of Specially Designated Nationals and Blocked Persons ("SDN List"). If Olenga's designation is not rescinded within thirty (30) days from the date of this submission, Olenga intends to file a civil complaint seeking judicial review of OFAC's unreasonable delay in rendering a decision on Olenga's reconsideration matter.

I.      <u>**Factual Background**</u>

On June 1, 2017, acting under E.O. 13413, as amended, OFAC designated Olenga for purportedly being a leader of an entity that has, or whose members have, allegedly engaged in actions or policies that undermine democratic processes of institutions in the DRC.[1]  In its press release announcing Olenga's designation, OFAC alleged that Olenga was designated for overseeing the Republican Guard.[2]

By means of a prior submission, Olenga sought the administrative reconsideration of his designation under OFAC's delisting procedures and was assigned Case ID DRC-11441.  On January 10, 2018, OFAC issued a formal questionnaire seeking information and documents responsive to a series of questions relevant to OFAC's consideration of Olenga's reconsideration request.  On April 10, 2018, Olenga filed initial responses to OFAC's questionnaire, as well as a factual and legal analysis as to why Olenga's designation should be rescinded.

On September 14, 2018, OFAC issued a follow-up questionnaire seeking additional information and documents relevant to its consideration of Olenga's reconsideration request. Olenga responded to OFAC's questionnaire on October 24, 2018.  As noted above, Olenga's response evidenced his removal from the FARDC and his assignment to a civilian position in which he exercised no control or command over members of the armed forces.  Olenga argued that—as the factual predicate for his designation was an allegation that he exerted "operational control over the Republican Guard"—his dismissal from the FARDC and his assignment to a civilian position evidenced a change of circumstances negating the basis of his designation and thereby supported delisting.

Olenga has not received any substantive communication from OFAC following his submission of the supplemental questionnaire response.  It has been more than ninety (90) days since the time of this submission; and, absent evidence in OFAC's possession that Olenga continues to meet the criteria for designation under E.O. 13413, as amended, OFAC is respectfully requested to rescind Olenga's designation and remove his name from OFAC's SDN List as soon as possible.

## II.    <u>Legal Analysis</u>

As noted above, Olenga's designation is predicated on OFAC's determination that he exerts "operational control over the Republican Guard [as Commander of the Military House of the President of the Republic]," and that he developed a plan to use the Republican Guard to disrupt the activities of the opposition activities and their financial support, including by "monitor[ing] and threaten[ing] the opposition to, and critics of, President Kabila."[3]  OFAC's

---

[1] PRESS RELEASE, *Treasury Sanctions Senior Congolese Official for Leading Republican Guard in Undermining Democratic Processes*, U.S. Dep't of Treasury, June 1, 2017, *available at* https://www.treasury.gov/press-center/press-releases/Pages/sm0100.aspx.
[2] *Id.*
[3] *Id.*

press release alleges that the Republican Guard is an entity that has, or whose members have, engaged in actions or policies that undermine democratic processes or institutions in the DRC, and Mr. Olenga is alleged to be a leader of the Republican Guard.[4]

In his April 10, 2018 Questionnaire Response, Olenga contended that he did not exercise "operational control over the Republican Guard," since his prior role as Commander of the Military House of the President of the Republic did not include authority over or responsibility with respect to the Republican Guard. Olenga provided supporting documentation for his claim, including DRC ordinances specifying the respective roles of the Maison Militaire and the Commander of the Military House which evidenced that Olenga's position was not within the chain of command between the Republican Guard and the President of the Republic. Accordingly, Olenga argued that there was an insufficient basis for his designation and that OFAC's allegations as to his "operational control over the Republican Guard" were in error.

In Olenga's October 24, 2018 Questionnaire Response, he noted that he had been removed from his position as Commander of the Military House and no longer holds the obligations and responsibilities of that position. In addition, Olenga no longer held a position in the FARDC as of July 14, 2018, as President Kabila had ordered his retirement. Olenga further noted that he had been appointed Charge de Mission to act as a diplomatic liaison between President Kabila and former DRC revolutionaries—a position that was purely civilian in nature and entailed no authority over DRC security forces whatsoever.

For these reasons, Olenga respectfully contends that the basis for his designation has been negated and that OFAC lacks legal authority to maintain his designation under E.O. 13413, as amended. As noted above, Olenga did not exercise operational control over the Republican Guard in his former capacity as Commander of the Military House. Even if he had, Olenga's termination from that position and his subsequent retirement from the FARDC evidences a fundamental change in circumstances warranting delisting under OFAC's delisting procedures.[5]

## III.   Conclusion

For the foregoing reasons, Olenga respectfully requests that OFAC take rescind his designation and remove his name from OFAC's SDN List as soon as possible. At a minimum, Olenga's retirement from the FARDC has nullified the factual and legal predicate under which OFAC designated him.

Finally, Olenga does not seek to burden the agency with litigation but rather hopes to forge an immediate resolution to the pending reconsideration matter. That resolution is in OFAC's interests, as OFAC will not be required to expend significant resources defending itself

---

[4] *Id.*

[5] 31 C.F.R. § 501.807.

DRC-16433 0251

against litigation and can instead show that Olenga has met the conditions for delisting provided for by the agency's procedures. If OFAC continues to delay its decision on Olenga's reconsideration matter despite clear and convincing evidence as to a change in circumstances, Olenga intends to file a civil lawsuit seeking judicial review within the next thirty (30) days.

Please forward all correspondence regarding this submission to:

Erich C. Ferrari, Esq.
Ferrari & Associates, P.C.
1455 Pennsylvania Ave., NW
Suite 400
Washington, D.C. 20004

Undersigned counsel respectfully requests a personal interview with an OFAC representative should the agency have any questions regarding this matter.

Sincerely,

Erich C. Ferrari



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

Case ID DRC-16433

OFFICE OF FOREIGN ASSETS CONTROL

## DESIGNATION AND BLOCKING MEMORANDUM

Pursuant to Executive Order 13413 of October 27, 2006, "Blocking Property of Certain Persons Contributing to the Conflict in the Democratic Republic of the Congo" as amended by Executive Order 13671 of July 8, 2014, "Taking Additional Steps to Address the National Emergency With Respect to the Conflict in the Democratic Republic of the Congo" (the "Order"), the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.), National Emergencies Act (50 U.S.C. 1601 et seq.), section 5 of the United Nations Participations Act, as amended (22 U.S.C 287c), section 301 of title 3, United States Code, and section 547.802 of the Democratic Republic of the Congo Sanctions Regulations, 31 CFR 547 (the "Regulations"), I hereby determine, in consultation with the Secretary of State, that there is reason to believe the person identified below and in the attached evidentiary memorandum (DRC-16433), meets one or more criteria for designation set forth in Section 1 of the Order. Therefore, the person identified below is designated pursuant to the Order and will now appear on the Office of Foreign Assets Control (OFAC)'s List of Specially Designated Nationals and Blocked Persons.

**Individual:**

OLENGA, Francois (Latin: OLENGA, François) (a.k.a. OKUNJI, Francois (Latin: OKUNJI, François); a.k.a. OLENGA TATE, Francois; a.k.a. OLENGA TETE, Francois (Latin: OLENGA TETE, François); a.k.a. OTSHUNDI, Francois (Latin: OTSHUNDI, François)), Kinshasa, Congo, Democratic Republic of the; DOB 09 Oct 1948; alt. DOB 10 Sep 1948; alt. DOB 10 Jul 1949; POB Kindu, Maniema, Democratic Republic of the Congo; nationality Congo, Democratic Republic of the; citizen Congo, Democratic Republic of the; Gender Male; General; Chef de la Maison Militaire; Head of the Military House of the President (individual) [DRCONGO].

Accordingly, except to the extent otherwise provided by law or unless licensed or otherwise authorized by OFAC, (1) all real, personal, and any other property and interests in property of the individual named above that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of U.S. persons are blocked and may not be transferred, paid, exported, withdrawn or otherwise dealt in, and (2) any transaction or dealing by a U.S. person or within the United States in property or interests in property of the individual named above is prohibited.

Additionally, except to the extent otherwise provided by law or unless licensed or otherwise authorized by OFAC, the following are prohibited: (1) any transaction that evades or avoids or has the purpose of evading or avoiding any of the prohibitions contained in the Order or the Regulations; (2) any attempt to violate any of the prohibitions of the Order or the Regulations; and (3) any conspiracy formed to violate any of the prohibitions in the Order or the Regulations.

The President has found in Section 4 of the Order that, because of the ability to transfer funds or other assets instantaneously, prior notice to persons designated pursuant to the Order of measures to be taken pursuant to the Order would render these measures ineffectual.  Accordingly, I find that no prior notice should be afforded the person named above because to do so would provide an opportunity to evade the measures authorized by the Order and, consequently, render those measures ineffectual towards addressing the national emergency declared in the Order.


August 15, 2019
_____
Date

_____
Andrea Gacki
Director
Office of Foreign Assets Control



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

Case ID: DRC-11441

Erich C. Ferrari, Esq.
Ferrari & Associates, P.C.          AUG 15 2019
1455 Pennsylvania Avenue, NW
Suite 400
Washington, DC 20004

Dear Mr. Ferrari:

After reviewing the information provided by your client, François Olenga Tete
(Mr. Olenga), in connection with his petition for delisting from the list of Specially
Designated Nationals and Blocked Persons (SDN List), the U.S. Department of the
Treasury's Office of Foreign Assets Control (OFAC) has determined that information
presented by Mr. Olenga demonstrates a change in circumstances that would warrant his
removal from the SDN List based on the criteria originally used.

However, based on information available to OFAC, Mr. Olenga will remain designated
pursuant to Executive Order 13413 of October 31, 2006, "Blocking Property of Certain
Persons Contributing to the Conflict in the Democratic Republic of the Congo," as
amended by Executive Order 13671 of July 8, 2014, "Taking Additional Steps to Address
the National Emergency With Respect to the Conflict in the Democratic Republic of the
Congo," pursuant to a determination that Mr. Olenga is responsible for or complicit in, or
has engaged in, directly or indirectly, actions or policies that undermine democratic
processes or institutions in the Democratic Republic of the Congo.

Concurrent with the above determination, OFAC has begun processing for release the
unclassified, non-privileged portions of the evidentiary memorandum and related exhibits
supporting OFAC's determination. OFAC will provide you these portions and related exhibits
when they are available for release.

This letter serves as notice of these actions by OFAC. If you have any questions or would
like to further discuss this matter, please contact Trial Attorney Stuart Robinson at (415)
436-6635 or Stuart.J.Robinson@usdoj.gov.

Sincerely,

Andrea Gacki
Director
Office of Foreign Assets Control

UNCLASSIFIED

<u>Unclassified Summaries of Classified Information</u>

(U) In 2019, Olenga supported offensive, violent action against Western diplomats in Kinshasa, DRC.

(U) During protests in 2018, the Republican Guard regularly arrested protestors and assaulted them while in Republican Guard custody.  Republican Guard soldiers used a variety of weapons to beat protestors.

(U) In 2017, the Office of the DRC President instructed Maison Militaire leadership to deploy a group of operatives to identify and entice DRC opposition leaders to abandon their opposition stances in an attempt to weaken the opposition movements.  Maison Militaire Deputy Chief ordered the deployment of various agents to identify which opposition leaders would be most susceptible to bribery.  Maison Militaire leadership intended to offer them financial incentives if they agreed to reduce their opposition stances.

(U) The Republican Guard falls outside the regular chains of command.  Although it is technically a unit of the FARDC (Armed Forces of the DRC), by law it is under operational control of the Presidency.  This essentially means that it reports to the head of the Maison Militaire, General Francois Olenga.

(U) In late 2016, the Republican Guard fired into crowds of protestors in Lubumbashi, killing two civilians.

(U) Kabila ordered the Republican Guard to supplement the PNC (Congolese National Police).

(U) On September 19, 2016, Republican Guard officers dressed in PNC uniforms used live ammunition in combating protests.

(U) Olenga's 2016 plan included teams that could travel throughout the DRC to prevent opposition protests, especially those organized by the G7.  The teams would infiltrate demonstrations to identify protest leaders, report opposition plans to Republican Guard leadership, and attempt to prevent the opposition leaders from gathering support.

(U) FARDC General Francois Olenga, Chef de la Maison Militaire, gives orders to the Republican Guard on a day to day basis.

(U) As of 2015, Olenga gave orders to the Republican Guard on a day-to-day basis, even though General Ilunga Kampete was the actual commander of the Republican Guard.

UNCLASSIFIED